IN THE MATTER OF THE APPLICATION OF CERTAIN CREDITORS OF WILLIAM H. McCAFFREY, DECEASED, TO COMPEL THE ADMINISTRATRIX, WITH THE WILL ANNEXED, TO FILE AN ADDITIONAL INVENTORY OF THE PERSONAL PROPERTY BELONGING TO THE ESTATE OF SAID DECEASED.

*Power of a trustee to make leases extending beyond his estate — the lease is invalidated by the death of the beneficiary unless expressly authorized by the trust deed.*

In 1871, John S. Perry conveyed to Joseph H. Shoudy a lot of land, in trust, to receive the rents and profits and pay the same to Harriet Perry for her natural life, and on her death the land was to be sold or partitioned: One-third to be vested in Annie E. McCaffrey, a daughter of the said Harriet, her heirs and assigns; another third to be vested in said trustee, in trust, to apply the income to Helen A. Perry, another daughter, until she became twenty-one, then that third to vest in her in fee; another third to vest in said trustee, in trust, to apply the income to Mary L. Eggeling, another daughter, during her natural life; at her death the third to go to her descendants in fee then living; a further provision being made that if either Annie E., Helen A. or Mary L. should die without lawful descendants, the share of the person so dying should go to the other two, or the survivor of them, except that any share which would otherwise go to the said Mary L. should go to the said trustee for her benefit.

On September 22, 1880, Payne, the successor of Shoudy, in the trust, executed a lease of the land to William H. McCaffrey for five years from May 1, 1881, with the privilege to McCaffrey of a renewal for five years more. On the 13th of March, 1885, Chapman, then the successor of the trustee, executed a renewal of the lease to McCaffrey for five years. Harriet Perry died May 10, 1886. McCaffrey paid no rent under the renewal, and at his death, November 2, 1886, $5,000 of rent was unpaid.

Upon an appeal from an order of the surrogate directing his widow, Annie E. McCaffrey, who had been appointed administratrix, with the will annexed, of William H. McCaffrey, to place on her inventory such lease, and also ordering her and the appraisers to estimate the value thereof from November 2, 1886, to May 1, 1891, and insert it in the inventory:

*Held,* that the surrogate had no authority to direct the appraisers as to the manner in which they were to estimate the value of the property; that they were to do so according to the best of their knowledge and ability.

That there was no rule of law which required the administratrix to make any estimate of the value of the property inventoried.

That the trust estate in the whole property ceased at the death of Harriet L. Perry, both by the express words of the deed and by the provisions of 1 Revised Statutes (730, § 67).

That the purpose of the trust then ceased and the remainder vested in possession and Mrs. McCaffrey became the owner in fee of one-third, subject, however, to be divested should she die without lawful descendants.

That, even if the trustee had a power to sell or partition, this was simply a power and did not continue the title in him.

That, as nothing appeared in the case to show whether either or both of the trusts in the other two-thirds of the property had ceased, or what was their present condition, the question as to whether there was a continuance of the trust in the trustee and the lease was, therefore, binding on those two-thirds so long as the trust estate continued, could not be decided in this case.

That, so far at least as Mrs. McCaffrey's one-third was concerned, the lease ceased to be valid, and that, as administratrix of William McCaffrey, she was not required to put it in the inventory.

*Newcomb* v. *Ketteltas* (19 Barb., 608); *Greason* v. *Keteltas* (17 N. Y., 491); *Labatut* v. *Delatour* (54 How., 435) distinguished.

*It seems*, that a power in trust to make leases which should extend beyond his estate might be conferred upon a trustee by a deed of trust.

APPEAL by Annie E. Wilder, administratrix, with the will annexed, of the goods chattels and credits of Wm. H. McCaffrey, deceased, from an order made by the surrogate of Saratoga county, dated June 12, 1888, directing her, as such administratrix, to file an additional inventory of the personal estate of said deceased, and to include therein a certain lease, claimed to be held by said deceased, of the Adelphi Hotel premises in the village of Saratoga Springs. ·

In 1871, John S. Perry executed to Joseph A. Shoudy a deed by which he conveyed a lot of land in trust. The trust was to receive the rents and profits and pay the same to Harriet Perry for her natural life. On her death the land was to be sold or partitioned. One-third was to be vested in Annie E. McCaffrey, a daughter of said Harriet, her heirs and assigns. Another third was to be vested in said trustee, in trust, to apply the income to Helen A. Perry, another daughter, till she became twenty-one, then that third to vest in her in fee; another third was to vest in said trustee in trust, to apply the income to Mary L. Eggeling, another daughter, during her natural life, at her death that third to go to her descendants in fee, living at her death.

It was further provided that if either Annie E., Helen A. or Mary L. should die without lawful descendants, the share of the person so dying should go to the other two, or the survivor of them, except that any share which would otherwise go to Mary L. should go to said trustee for her benefit.

On September 22, 1880, Payne, the successor of Shoudy in the trust, executed a lease of the land to William H. McCaffrey for

five years from May 1, 1881, with a privilege to McCaffrey of a renewal for five years more.

On the 13th of March, 1885, Chapman, then the successor of the trustee, executed a renewal of the lease to McCaffrey for five years. Harriet Perry died May 10, 1886. McCaffrey paid no rent under the renewal, and at his death November 2, 1886, $5,000 of rent was unpaid. His widow, Annie E. McCaffrey, aforesaid, afterwards married one Wilder, and was appointed administratrix with the will annexed of McCaffrey. She filed an inventory of his personal estate, but did not place therein the said lease. On the application of creditors of McCaffrey the surrogate ordered her to place on the inventory said lease, and also ordered her and the appraisers to estimate the value thereof from November 2, 1886, to May 1, 1891, and insert it in the inventory. The administratrix appealed.

*N. C. Moak*, for Anne E. Wilder, formerly Anne E. McCaffrey, appellant.

*Edgar T. Brackett*, for James Mingay and other creditors, respondents.

LEARNED, P. J.:

We find no authority for the surrogate to direct the appraisers as to the manner in which they are to estimate the value of the property. This they are to do according to the best of their knowledge and ability. (2 R. S., 82, § 4.) Nor is there any requirement of law, so far as we are aware, which requires the administratrix to make any estimate of the value of the property inventoried. (2 R. S., 82, § 2; page 84, § 16.) The important question, however, is whether the estate of McCaffrey has a valid lease which the administratrix should put into the inventory. (Code, § 2715.) The trust estate in the whole property ceased at the death of Harriet L. Perry; both by the express words of the deed (1 R. S., 729, § 61), and by the provisions of the statute. (1 R. S., 730, § 67.) The purpose of the trust then ceased, and the remainder vested in possession. Mrs. McCaffrey became the owner in fee of one-third, subject, however, to be divested should she die without lawful descendants. (*Hawley* v. *James*, 5 Paige, 318; *Miller* v. *Wright*, 109 N. Y., 194.)

Perhaps, after her death, the trustee had a power to sell or to partition, but this was simply a power, and did not continue the title. Mrs. McCaffrey had a right to take her third. (*Prentice* v. *Janssen*, 79 N. Y., 478; *Cutler* v. *Fairchild*, 41 id., 289.) This right was not destroyed by the contingency that she might die without descendants. A fee may be limited on a fee. (1 R. S., 724, § 24.)

As to the other two-thirds a further several trust was created. Nothing appears in the case to show whether either, or both, of those trusts have ceased or to show what is their condition. Perhaps it is not material in this case, because the position taken by the creditors is that the trustee for the life of Mrs. Harriet L. Perry had power during her life to make a lease of the whole property, which should extend and be valid beyond the life estate which he held, subject only to the right of a court of equity to set it aside as improvidently made.

If an estate had been given to Harriet L. Perry for life, with remainder over to the persons mentioned in the deed, we suppose that she could not have executed a valid lease to extend beyond her life estate. It was to avoid that difficulty that the statute authorized a power, probably the only special and beneficial power now valid. (1 R. S., 733, § 87, sub. 2.) And it would seem strange that one who holds an estate in trust for the life of another should have a power over the remainder, which would not have belonged to him if he had held the estate absolutely for life and not in trust. Probably the deed of trust might have given to the trustee a power in trust to make leases which should extend beyond his estate. (1 R. S., m. p. 734, § 95, sub. 2.) But nothing of that kind was done, and the authority of the trustee to affect the remainder after Harriet L. Perry's life must depend on the estate which he had.

Before considering the subject further we may say that it might be urged that, in respect to the other two-thirds, there was a continuance of the trust in the same trustee, and, therefore, that the lease was binding on those two-thirds so long as the trust estate continued; but we need decide nothing on that point, for nothing is shown as to the present condition of the trust in respect to those two-thirds. The parties interested do not seem to be before us. The appellant here is Mrs. Wilder, who is the owner in fee, as above stated, of

one-third, and whose rights as such owner are affected, if the lease is held valid against her estate.

There are some decisions on this point upon which the creditors rely, and which probably controlled the surrogate, and they should be examined carefully. The cases on which they principally rely are *Newcomb* v. *Ketteltas* (19 Barb., 608), and *Greason* v. *Keteltas* (17 N. Y., 491). Both of these arose on the same trust, and it is important to notice that that trust was created in 1817, and before the enactment of the Revised Statutes. When it was created, as may be seen by any reference to the old doctrines, the law of trusts differed much from the present law. The Revised Statutes abolished all uses and trusts as they had theretofore vested and established a new system. (1 R. S., 727, § 45.)

The case of *Greason* v. *Keteltas* was decided by the court to be an action at law to recover $1,200. The trustees had executed a lease for twenty-one years, with a clause that they would renew for twenty-one years unless they paid the appraised value of the building put on the land by the lessee. They would not renew nor appoint an appraiser. The lessee recovered the value of the building. It does not appear that the estate of the trustees had terminated; indeed, it would seem that it had not. The doctrine stated in the head-note is not sustained by the decision. In *Newcomb* v. *Ketteltas* it appears by the statement that the two daughters of the testator were living, and probably his son, John; so that the estate of the trustees had not ceased because the *cestuis qui trust* were living. The lease in question was similar to that in the previous case, and the plaintiff, the lessee, asked either the value of the building or a renewal of the lease. A demurrer to the complaint was overruled; therefore, the question as to the power to grant leases beyond the trustees' estate was not involved; but it will be seen that, throughout the decision, it is assumed that the fee was vested in the trustees. The court says the trustee can alienate the estate to a purchaser for a valuable consideration. Under the present statute he cannot (1 R. S., 730, § 65); and then the court says that all those capable of alienating property may make leases; which will endure as long as their interest in the thing leased, but no longer; and it will be seen that the argument rests on the basis that the trustee has a fee and a right to alienate. *Labatut* v.

*Delatour* (54 How, 435) only follows the two preceding cases. There is not, then, a case cited where the doctrine claimed by these creditors has been decided, although much has been said in opinions. Of course, it is not to be denied that there are trusts under which the trustees take a fee; such as trusts to sell lands for the benefit of creditors or to sell, mortgage or lease lands for the benefit of legatees, etc. (1 R. S., 728, § 55, subs. 1 and 2); but it is doubtful whether under subdivision 1 the trustee would have any power to lease; and, at any rate, under subdivision 3, under which this trust was created, the estate of the trustee must terminate with the life of the *cestui qui trust.*

We think, therefore, that so far, at least, as Mrs. McCaffrey's one-third is concerned, the lease ceased to be valid; and that as administratrix of McCaffrey she was not required to put it in the inventory. We decide nothing as to the other two-thirds; the facts are not before us.

Order reversed, with ten dollars costs and printing disbursements.

LANDON and INGALLS, JJ., concurred.

Order reversed, with ten dollars costs and printing disbursements.