In the Matter of the Application of THE CITY OF NEW YORK, Relative to Acquiring Title to the Lands Required for Opening, Widening and Extending One Hundred and Tenth Street (Although Not yet Named by Proper Authority) from the Circle at Fifth Avenue to Seventh Avenue, and that Part of the westerly side of Lenox Avenue between One Hundred and Tenth Street and Avenue St. Nicholas, etc.

J. SERGEANT CRAM and J. WOODWARD HAVEN, Trustees, etc., of HENRY A. CRAM, Deceased, Appellants; PHILIP DIETRICH, Lessee, and the CITY OF NEW YORK, Respondents.

*Will — when two distinct trusts are created, one for the life of the testator's widow and the other for the lives of certain children, with direction that on their deaths their respective shares go to their issue as directed by each child or otherwise absolutely — a lease for a term of years, given during the widow's life, terminates at her death — measure of damages to which the lessees are entitled where the demised premises are taken by the city of New York for street purposes.*

A testator, by the 3d clause of his will, devised his residuary estate, both real and personal, to his executors, with directions to hold the same upon certain specified trusts during the lifetime of his wife.

The 6th clause of the will provided as follows: "After the death of my wife, I direct my trustees to divide my real and personal estate into five equal parts or shares, to hold and invest one such share for each of my children, to collect and receive and pay and apply the rents and income arising from the share set apart for each child to his or her use during life. I further direct that on the death of my children and as they severally die my executors and trustees convey, pay and assign to the issue of said child the part or share held in trust for him or her in such proportions and at such time or times as he or she shall direct and appoint in and by his or her last will and testament and in case of failure to make such appointment then to such issue absolutely."

The 7th clause provided: "I direct that if any of my children should die in my lifetime or in the lifetime of my wife that my executors and trustees pay the income, rents, profits and proceeds of the share of said child, to the issue of the one so deceased during said trust."

The 9th clause provided: "I authorize and empower my executors and trustees to rent or let from year to year or for any term of years, any of the real estate."

By a codicil to his will, the testator provided: "And Whereas by the sixth clause of my said last will and testament, one of the five equal parts in which my estate is to be divided in the manner and at the time therein mentioned, is given to my son, John Sargent* Cram, for life only, I hereby direct that the

* *Sic.*

said fifth part, so devoted to my said son, John Sargent* Cram, shall be conveyed, paid and assigned to the said John Sargent* Cram absolutely and entirely without any restriction."

The codicil also contained a precisely similar clause respecting that part of the estate devised to another son of the testator.

The testator's wife survived him, and at a time when she was sixty-six years of age and the probable duration of her life was about seven years, the surviving executor and trustee of the will leased a portion of the testator's residuary real estate for a period of twenty years.

*Held,* that the original trust estate would, by the terms of the will, terminate upon the death of the testator's widow, and that the trust estates created by the 6th clause of the will were entirely new and different estates;

That the trustee had no power, under the 9th clause of the will, to lease the testator's real estate for a period extending beyond the duration of the original trust estate, viz., the widow's lifetime, as otherwise, if such a lease were valid, and the widow died before the expiration of the lease, the trustees would be unable to comply with the provisions of the will and codicil directing them, upon the death of the widow, to transfer to the two sons mentioned in the codicil the absolute title to their shares, and also to transfer to the issue of any child of the testator, who might have died before the expiration of the trust estate, the absolute title to such deceased child's share;

That the lease for twenty years executed by the surviving executor was valid while the widow lived, and that where, during the lifetime of the widow, the leased property was taken by the city of New York for street purposes, the lessee was entitled to be awarded the value of the lease during the widow's lifetime;

That, in measuring such damages, the rule stated in *Matter of Daly* (29 App. Div. 286) should be followed.

APPEAL by J. Sergeant Cram and J. Woodward Haven, as trustees, etc., of Henry A. Cram, deceased, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of July, 1902, confirming the report and supplemental report, of commissioners of estimate and assessment.

*James A. Deering,* for the appellants.

*Truman H. Baldwin,* for the respondent Dietrich.

HATCH, J.:

The regularity of the proceedings in this matter is not questioned, nor is the city interested. The point involved is the validity of the award made to Philip Dietrich for the value of a leasehold interest in certain premises affected by the widening of One Hundred and

* *Sic.*

Tenth street. Henry A. Cram was the owner of the premises involved during his lifetime. He died, leaving a last will and testament, which was duly admitted to probate in the county of New York on the 1st day of May, 1894. He left him surviving a widow and five children, one of whom, Harry Spencer Cram, died in March, 1895. He bequeathed to his widow all his household goods, books, horses and carriages and other contents of his residence and stable with the absolute right of disposition. The rest and residue of his estate, both real and personal, he devised and bequeathed to certain trustees named in the will, their survivor and survivors, for the following purposes: " *Third.* I direct my trustees during the life of my wife to pay or apply to the use of my said wife, out of the income of my estate, the sum of twenty thousand dollars in semi-annual, quarterly or monthly payments as she may prefer; I also direct my trustees to pay all taxes, assessments, premiums of insurance and necessary expenses on the house and stable hereinafter mentioned; the balance of said income I direct my trustees to pay to my children share and share alike." By the 4th clause of the will the testator authorized and empowered his trustees, with the consent of the wife, to sell and convey any of the real estate devised to her for life. By the 5th clause of his will he directed his trustees to receive and invest the proceeds and pay and apply the interest and income thereof to his wife as long as she should live, the provisions of the will in her favor being in lieu of dower. By the 6th clause he provided: " After the death of my wife, I direct my trustees to divide my real and personal estate into five equal parts or shares, to hold and invest one such share for each of my children, to collect and receive and pay and apply the rents and income arising from the share set apart for each child to his or her use during life. I further direct that on the death of my children and as they severally die my executors and trustees convey, pay and assign to the issue of said child the part or share held in trust for him or her in such proportions and at such time or times as he or she shall direct and appoint in and by his or her last will and testament and in case of failure to make such appointment then to such issue absolutely. *Seventh.* I direct that if any of my children should die in my lifetime or in the lifetime of my wife that my executors and trustees pay the

income, rents, profits and proceeds of the share of said child, to the issue of the one so deceased during said trust." By the 8th clause was given to each of the children the right of disposition by will of his or her share. "*Ninth.* I authorize and empower my executors and trustees to rent or let from year to year or for any term of years, any of the real estate, to collect the rents and pay all taxes, assessments, premiums of insurance and all other necessary expenses (including the property bequeathed to my wife for life; to call in, change, invest and reinvest all trust securities and investments whenever and as often as they deem necessary." By the 10th clause the surviving trustee is authorized to appoint one or more persons or a trust company not interested in the estate or any of the trusts created thereby to be associated with them or him in the execution of the trusts created by this will, and the person or persons thus appointed shall have the same rights and powers and duties as the said executors and trustees or the survivor of them, and such person or persons shall have the same rights and powers to nominate and appoint other trustees as though he had been particularly named as executor and trustee under this will. By the 11th clause the testator prohibited the power of anticipation of income, or of an assignment of any of the bequests under the will. By the 12th clause he directed his executors and trustees to exercise certain powers in the sale and investment of his estate. By the 13th clause he appointed his wife and his two sons, John Sergeant Cram and Harry Spencer Cram, to be the executors and trustees of his will. By a codicil to his will, which was duly proven with the will as a part thereof, he provided as follows : " And Whereas by the Sixth clause of my said last will and testament, one of the five equal parts in which my estate is to be divided in the manner and at the time therein mentioned, is given to my son, John Sargent* Cram, for life only, I hereby direct that the said fifth part, so devoted to my said son, John Sargent* Cram, shall be conveyed, paid and assigned to the said John Sargent* Cram absolutely and entirely without any restriction." A precisely similar clause was contained in the codicil respecting that part of the estate devised to Harry Spencer Cram. The wife of the testator is still living and at the time of the making of the leases in question was sixty-six years of age, the probable

* *Sic.*

duration of her life being slightly above seven years.   The testator's two sons, John Sergeant Cram and Harry Spencer Cram, qualified as executors and trustees of the will.   Harry Spencer Cram having died, the surviving executor and trustee executed two leases, the first, dated May 10, 1897, for the term of twenty years from the 1st day of September, 1897; the second was dated July 24, 1897, for a term of twenty years from the 1st day of December, 1897; both leases being for a valuable consideration.   The land thus leased was vacant property, located at the corner of Seventh avenue and One Hundred and Tenth street at the northern extremity of Central Park, and approximated seventy-five feet on Seventh avenue and one hundred feet on the old line of One Hundred and Tenth street. This was a part of the property taken by the city in this proceeding.   The commissioners of award and assessment allowed for a portion of the plot taken, being a strip on One Hundred and Tenth street, the total sum of $53,750, of which sum they allowed to Dietrich $13,500 for "damage to leasehold interest," and to the trustees under the will of Henry A. Cram $40,250.   Upon motion being made to confirm said report, objection was made by the trustees of the Cram estate; and the report, although confirmed as to all other matters, was sent back to the commissioners for revision and correction and to report how long the expired term of leasehold interest had been made in the award to Dietrich.   The commissioners filed their supplemental report, wherein they reported that the award to Dietrich was for the unexpired term of his leases from the 2d day of July, 1900, the date when the title to the lands were vested in the city of New York, down to and including the expiration of the term of the two leases, and the final report of the commissioners, together with their supplemental report, was confirmed by the Supreme Court, and from the order entered thereon the executors and trustees of the estate of Henry A. Cram appeal.

It is claimed by the appellants that the leases executed by the surviving trustee are void, for the reason that the term granted extended beyond the trust created by the will of the deceased, and that the term thus created is obnoxious to the trust provisions contained in the will, and is, therefore, in contravention of the trust estate.   Under the terms and provisions of the will it cannot be doubted but that the trustees took the legal estate of the whole of

the testator's real estate during the life of the widow, and, exclud-
ing from consideration for the moment the codicil, upon the expira-
tion of the trust created in favor of the widow, the trustees took the
legal estate of all the property devised during the lives of the five
children. The entire original trust estate was, therefore, determined
upon the death of the wife, for while provision was made for the con-
tinuance of the trust estates, yet, by the terms of the will, the trustees
were required to divide the real and personal estate into five equal
parts or shares and hold the same for the benefit of the children.
This was a direction for the creation of an entirely new and different
estate, not in existence during the continuance of the trust in favor
of the wife, but came into being immediately upon the termination
of such estate. They were, therefore, new and different estates not
before existing. (*Manice* v. *Manice*, 43 N. Y. 303, 374.) The trust
estate, therefore, which the trustees held at the time when the sur-
viving trustee executed the leases in question, continued only during
the life of the widow, and unless express power to lease for a period
longer than the duration of this life estate is expressed in terms in the
will the authority to lease would be limited upon the duration of
such trust estate. (*Gomez* v. *Gomez*, 81 Hun, 566; S. C., 147
N. Y. 195.)

It is claimed, however, that such power exists by virtue of the
provisions contained in the 9th clause of the will, and we are cited
in support of such doctrine to the case of *Ahern* v. *Steele* (115 N.
Y. 203), where the court cites with approval the doctrine laid down
in *Greason* v. *Keteltas* (17 id. 491). It is to be observed, concern-
ing that case, that it arose out of a trust created in 1817 and before
the enactment of the Revised Statutes, when the law was quite dif-
ferent from that which was incorporated into the Law of Uses and
Trusts under the Revised Statutes. Therein the court held that a
trustee under the old doctrine could alienate the estate to a purchaser
for a valuable consideration, and could lease the same so long as his
interest endured therein. The distinction is noticed in *Matter of
McCaffrey* (50 Hun, 371; cited with approval in *Gomez* v. *Gomez*,
147 N. Y. 201). Under the provision of section 65 of the Statute
of Uses and Trusts (1 R. S. 730, as amd. by Laws of 1895, chap.
886) every sale, conveyance or other act of the trustee in contra-
vention of the trust is rendered absolutely void. Under this

statute, courts have held that a trustee will be prevented from exercising his discretion with respect to the trust property so as either to oppress the beneficiary or cause loss, and that the jurisdiction of the court may always be invoked for its conservation. (*Cuthbert* v. *Chauvet*, 136 N. Y. 326.) This provision was revised in section 85 of the Real Property Law (Laws of 1896, chap. 547, as amd. by Laws of 1897, chap. 136) and the only statutory power to lease is that contained in section 86 of the Real Property Law. It is evident, therefore, that the authority relied upon by the respondent may not be resorted to for the purpose of supporting the validity of those leases. The language used in the 9th clause of the will, vesting power in the trustees to lease, is in general terms and is quite broad. It is to be construed, however, in connection with the estates created in trust. By the provisions of the original will, the trustees are required, after the termination of the estate of the widow, to pay the share and its proceeds to the issue of such child, if one deceased, during the existence of the trust created by the will. Upon failure to appoint by a last will and testament by such deceased child, the direction is to pay and transfer to the issue absolutely. The power invested in the trustee to lease follows these clauses of the will, and it is to be construed in accordance with its terms. It is evident that if the trustees have the general power to lease for any term of years in their discretion, they may render it impossible to transfer the absolute share of a child to the issue, in the event such contingency should happen during the existence of the lease. If such a lease be valid, then it is evident that absolute title could not be given to the issue of the child, as it would be subject to the incumbrance of the lease, and the estate thereby devised to that extent would be cut down. It is, to say the least, extremely doubtful whether the authority to lease is conferred by the use of general language where its effect is to cut down the prior estate. While the testator had the undoubted power to authorize a leasing for any period of time during which the trust continued, or beyond it, either as to the wife or to the children, yet it is evident that the language granting such power should be clear and unequivocal, and indicate an intent upon the part of the testator to make the estates granted subject to the exercise of such power.

If there were doubt upon the subject, so far as the original will was concerned, we think such doubt was clearly resolved by the provisions contained in the codicil. As it refers to the 6th clause of the will and modifies its provisions, we think that it should be read into that clause with the same force and effect as though originally contained therein. Its provisions constitute a devise to the two sons, John Sergeant Cram and Harry Spencer Cram, which come into being immediately upon the termination of the life estate in favor of the widow. Such estates are required to be paid and transferred by the trustees to the respective legatees " absolutely and entirely without any restriction." By authority of these provisions the two sons become entitled to take their shares of the estate absolutely free and clear of any incumbrance whatsoever. The power to lease is made subject to this devise. If the power to lease for any term of years exists, then the devise may not be made absolute, as the trustees could only convey subject to the incumbrance of the lease. The power, therefore, would be clearly inconsistent with the devise, as its effect would be to cut down the estate. It is well-settled doctrine that an estate in fee created by the will will not be cut down or limited by a subsequent clause, unless it is as clear and decisive as the language of the clause which devises the estate. (*Roseboom v. Roseboom*, 81 N. Y. 356 ; *Byrnes* v. *Stilwell*, 103 id. 453.) General language, however extensive its scope, will not of itself work such a result. Under the terms of the present will and codicil we think it clear that the testator intended to vest the estates absolutely as to the shares of the two sons, and also as to the share of any child dying, when the contingency happened under which the same might be vested ; and as the creation of these estates was only dependent upon the life estate of the widow, the power to lease is to be construed in connection with such devise, and the language authorizing the trustees to lease from year to year, or for any term of years, is to be construed as measured by the duration of the life estate of the widow, and the power to lease is limited thereon. Such construction harmonizes all of the provisions of the will, gives force and effect thereto, and vests in each party entitled to take, upon the termination of the life estate, the property devised free and clear of incumbrances as to the two children ; and, so far as the new trusts were created in favor of the other children, the trustees

were without power to incumber beyond the life estate of the widow.

While we reach the conclusion that the trustee had no power to lease beyond the term of the trust estate for the widow, we are of opinion that such leases are valid while such trust estate endures. It cannot be said that leases for that period are in contravention of the trust estate. On the contrary, power to lease for this term is expressly granted, and we see no reason why the leases may not be upheld as granting a valid estate for that period. The rights of the parties are to be determined upon equitable principles, and as the tenant has made valuable improvements upon the leased property, he ought in equity to be protected in the enjoyment of the estate so far as the trustee had power to grant the same. In *Weeks* v. *Cornwall* (19 Abb. N. C. 356) a receiver *pendente lite* was authorized, upon an *ex parte* application, to lease the premises covered by his receivership for a term of three years. Litigation which rendered necessary his appointment was terminated before the expiration of the lease, and application was made to cancel the same. The court granted the motion, holding that the property could be sold free therefrom, but that the lessees were entitled to be indemnified for loss sustained by the determination of the same. Upon appeal such holding was affirmed (*Weeks* v. *Weeks*, 106 N. Y. 626), the court holding that a lease authorized by the court, which might extend beyond the termination of the litigation, would be an unjustifiable exercise of the judicial discretion; but that such leasing would not be void, even though authorized without notice as the court had jurisdiction of the proceeding and had power in the premises; that such lease, however, should not be sustained, but the lessee should be indemnified.

In principle this case is not different. Here there was ample power to lease for a given period, but not longer. Beyond such period the leases are void for the reason that they would cut down the estate devised and are, therefore, in contravention of the statute; but for the duration of the life estate there was ample power to lease, and equity requires that the lessee should be protected in the enjoyment of the property during that period. This entitled the tenant to an award for the value of the leases during the existence of the trust estate in favor of the widow. It may be difficult to

measure the value, because such term is necessarily uncertain, but the difficulty of measurement does not defeat the right. The rule by which the damages are to be measured is found expressed in *Matter of Daly* (29 App. Div. 286), and does not need further elaboration by us. The foregoing discussion serves to show that the basis upon which the award to the tenant was made by the commissioners was erroneous and improper.

It follows that the award of the commissioners as to the value of the leasehold estate should be reversed, and the report sent back to the commissioners of estimate for revision and correction, with ten dollars costs and disbursements to the appellants.

VAN BRUNT, P. J., INGRAHAM, McLAUGHLIN and LAUGHLIN, JJ., concurred.

Order reversed and report sent back to commissioners for revision and correction, with ten dollars costs and disbursements to the appellants.