ST. LOUIS UNION TRUST COMPANY, a Corporation, Trustee under the Will of Irwin Z. Smith, Respondent, v. SIMMON VAN RAALTE, Appellant.

St. Louis Court of Appeals. Opinion Filed February 5, 1924.

1. **TRUSTS AND TRUSTEES: Testamentary Trusts: Leases: Implied Power of Trustee to Lease Real Estate: Period Beyond Duration of Trust: Limitations.** Where a testamentary trustee is given authority to sell property, and to collect the rents, issues and profits accruing from the estate, though no express power to lease real estate is conferred upon the trustee, the powers conferred indicating that the estate is to be managed so as to be income producing, the power to make leases for reasonable periods, consistent with the nature and purposes of the trust may be implied, as an incident reasonably necessary to the management of the trust property; but the general rule is that, in the absence of express authority therefor conferred upon the trustee by the trust instrument, the trustee is without power to lease the trust property for a term extending beyond the life of the trust (unless it be in exceptional cases, by authority of court), and that where the trustee makes a lease to continue beyond the life of the trust, the excessive period— that is, the period beyond the termination of the trust—will be held to be void.

2. ———: ———: ———: **Power to Lease Real Estate: Not Conferred: Equity: Authorization of Long Term Lease Beyond Duration of Trust: Exceeds Powers of a Court of Equity.** Where the powers conferred on a trustee by the will did not clothe the trustee with power to execute a lease extending many years beyond the probable duration of the trust, *held*, under the circumstances of the instant case the authorization of the execution of such lease would have been in excess of the legitimate powers of a court of equity in the exercise of its supervisory jurisdiction over the trust.

3. **CONTRACTS: Construction: Covenants: Independent or Mutual and Dependent: Intention.** The question of whether a particular covenant in a contract is independent, or the respective covenants of the parties mutual and dependent, is one to be determined by the intention of the parties to be found from the rational interpretation of the contract in the light of the usual rules of construction, and when the contract, taken as a whole, shows that the parties intended that the performance of one covenant shall

St. Louis Union Trust Co. v. Van Raalte.

depend upon the performance of the other, such other is a dependent covenant even if it forms only a part of the consideration.

4. ——: ——: Construed as a Whole. A contract should be construed as a whole, giving effect to all of the words thereof, where this may be done.

5. LANDLORD AND TENANT: Contracts: Leases: Contract to Execute New Lease: Mutual and Dependent Covenants: Inability of one Party to Perform: Other Party Discharged. In an action by a testamentary trustee to recover certain taxes assessed against certain real estate constituting a part of the estate in the hands of plaintiff as such trustee, which taxes it is alleged the defendant by agreement with plaintiff obligated himself to pay, the contract between such trustee and defendant is reviewed, and it appears, viewing such contract as a whole, that defendant was willing to agree to remain liable for the rents and taxes until a date certain, provided he could have the "protection to the extent afforded by the agreements on the part of the trustee," as set forth in the contract; the contract reciting that defendant's agreement to remain liable for the rents and taxes was made in consideration of both the continued reduction of the rents and "of the agreements on the part of the trustee hereinafter set forth." Such agreements were that the trustee would, on the request of defendant, declare a forfeiture of a certain long term lease then on the real estate, and as soon as it had obtained possession of the premises would execute and deliver to the defendant or his nominee a new lease identical in terms with the prior lease, etc., *held* that the agreement of the defendant to become liable for the rents and taxes, and the agreement of the trustee to execute a new lease to the defendant, were mutual and dependent covenants, and that the agreement to execute the new lease was not a subordinate covenant incidental to the main purpose of the agreement, but a vital consideration operating as an inducement to defendant's agreement to stand liable for the rents and taxes; and since the trustee, had it attempted to comply therewith, had not the power to give defendant that which it had contracted to give him, the defendant was discharged from the obligation to pay the rents and taxes.

6. CONTRACTS: Mutual and Dependent Covenants: Breach: Party Claiming Breach Must Show Performance. Where the stipulations of a contract are mutual and dependent, before one party may recover as for the other party's breach, he must show performance on his part or that he is ready, able and willing to perform.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Granville Hogan,* Judge.

REVERSED.

*Robert E. Collins* and *O'Neill Ryan* for appellant.

(1)   The court below erred in admitting over the objections and exceptions saved by the defendant (appellant) irrelevant, immaterial and incompetent evidence. (2)   The will of Irwin Z. Smith did not give to the St. Louis Union Trust Company as trustee power to lease the real estate involved in this case, and, therefore, the trustee did not have the power to lease to the appellant said real estate for a term which would expire on July 31, 2004, a period of approximately eighty-six years.   In re Hogaradt, 45 N. Y. Suppl. 841; South End Warehouse Company v. Lavery, 12 Cal. App. 449; In re Hubbell, 135 Iowa, 637; Bergengren v. Aldrick, 139 Mass. 259; In re 110th Street, 81 N. Y. App. Div. (1902); Standard Metallic Paint Company v. Prines, 133 Pa. St. 474; In re McCaffrey's Estate, 3 N. Y. Suppl. (1888).   (3) The covenant or agreement upon the part of the St. Louis Union Trust Company, as trustee, to give to Simon Van Raalte a lease terminating July 31, 2004, and the covenant and agreement on the part of the said Simon Van Raalte to pay the taxes assessed against the leased property up to February 1, 1920, both contained in the written agreement dated May 29, 1916, are mutual and dependent covenants and agreements, and the covenant and agreement upon the part of the said Simon Van Raalte cannot be enforced by the St. Louis Union Trust Company, as trustee, unless said St. Louis Union Trust Company, as trustee, had the power to execute such a lease and had first tendered performance upon its part.   11 Cyc. page 1053, and cases cited; Hambly v. Railroad, 21 Fed. 541; Curran Printing Company v. St. Louis, 213 Mo. 22; Keleher v. Henderson, 203 Mo. 498; Lincoln Trust Company v. Nathan, 175 Mo. 32; Turner v. Mellier, 59 Mo. 526; Denny v. Kile, 16 Mo. 450; Riley-Wilson Company v. Canning Company, 125 Mo. App. 325; Buck v. Harris, 125 Mo. App. 365; Law v. Paxton, 175 Mo. App. 541; Springfield

Seed Company v. Walton, 94 Mo. App. 76; Daly v. City of Carthage, 143 Mo. App. 564. (4) It was not necessary to a defense in this case that Simon Van Raalte, the defendant, should request or demand a forfeiture by the St. Louis Union Trust Company, as Trustee, of the leasehold estate: (a) Because Simon Van Raalte is not asking any affirmative relief through or in consequence of a forfeiture. (b) Because the St. Louis Union Trust Company, as trustee, in its notice to said Simon Van Raalte, dated October 24, 1918, that it had paid the taxes, proceeded to specifically advise the said Simon Van Raalte that unless the taxes were repaid without delay it would proceed forthwith to forfeit the then existing lease given by said Irwin Z. Smith so as to enable it, the said trustee, to give to said Van Raalte "A valid lease of said premises in accordance with the terms of your contract of May 29, 1916." (c) Because the trustee proceeded to at once forfeit the said lease (said Van Raalte refusing to pay the taxes amounting to the sum of $4258.75) and took possession of the property for the benefit of the trust estate without tendering or in any way indicating a purpose to make to the said Van Raalte, or to his nominee, a lease expiring on July 31, 2004, leased said premises to different tenants, thereby securing to the trust estate a very greatly increased rental. That is to say, under the old ninety-nine-year lease and under a new one for the unexpired period of ninety-nine years there would have been a rental of $4100 per annum, while the trust estate since the forfeiture of the term of the old ninety-nine-year lease has been receiving a gross rental of over $8000, or a net rental of about $6200. Manifestly, the trustee either recognized that it had not the power under the will of Irwin Z. Smith to execute the lease which it had agreed by the agreement dated May 29, 1916, to execute, as we contend it had not, or it preferred as a matter of good business to keep the property and sublet it upon more advantageous terms. (5) The St. Louis Union Trust Company, as trustee, is not acting in good faith in prosecuting this action, in that while it agreed in

consideration for the agreement on the part of Van Raalte to pay taxes amounting to the sum of $4258.75 to forfeit the old ninety-nine year lease and to give Van Raalte a new lease at the same rental as that reserved in the old lease, the term of the new lease to expire on the same date as that of the old lease, which new lease, as we contend, the trustee had no power to execute, it is now leasing the same premises for a net rental of $6200, a sum which is $2100 per annum in excess of the reatal which it had agreed to accept from Van Raalte.

*Bryan, Williams & Cave* for respondent.

(1)    The consideration for the defendant's agreement to pay the taxes and rentals upon the leasehold estate was the promise of the plaintiff to reduce the rental reserved by the lease.   Plaintiff did reduce the rental and thereby the defendant's liability became fixed.   Agreement of February 1, 1915; Agreement of May 29, 1916. (2)    No agreement was ever made between the plaintiff and defendant that a new lease should be executed to the defendant; he was merely given the option or right to demand that plaintiff should declare a forfeiture of the leasehold and execute a new lease to him, providing that he pay all expenses incurred in effecting such forfeiture and in obtaining possession.   The defendant never requested or demanded a forfeiture and the execution of a new lease to him, nor did he ever pay the expenses incurred and therefore he cannot complain.   Agreement of May 29, 1916; 13 Corpus Juris 660-661 and cases cited; Page on Contracts, sec. 2970; Rodgers v. Toilettes Company, 76 N. Y. Supp. 940; Ewing v. French, 1 Blackf. 107. Plaintiff's agreement to declare a forfeiture of the old lease and to execute a new one to the defendant was conditional upon a demand by defendant, was an independent covenant and its performance by plaintiff was not a condition precedent to its right of action.   Boone v. Eyre, 1 H. Bl. 273; Page on Contracts, sec. 2974, pages 5248-9; Turner v. Mellier, 59 Mo. 535-6; Kaufman v. Raeder, 108

Fed. 771 (54 L. R .A. 247); Watson Window Co. v. Weiss Cornice Co., 181 Mo. App. 318; Coal Co. v. Packing Co., 138 Mo. App. 274. (4) Even if the power of plaintiff, as trustee under Mr. Smith's will, to execute a lease to defendant was doubtful, yet it could have undoubtedly obtained from a court of equity, authorization and power to execute such a lease which was shown by uncontradicted evidence to be the proper and prudent way in which to handle this property. In re Upham, 48 L. R. A. (N. S.) 1004; Denegre v. Walker, 214 Ill. 113; Packard et al. v. Ill. Trust & Savings Co., 261 Ill. 450; St. Louis Union Trust Co. v. Prather et al., St. Louis Circuit Court Cause No. 97378.

ALLEN, P. J.—This is an action by the plaintiff trust company as trustee under the will of Irwin Z. Smith, deceased, to recover from the defendant the sum of $4258.75, being the amount of certain taxes—general taxes for the years 1916 and 1917, and sprinkling taxes for the years 1912 to 1917, inclusive—assessed against certain real property constituting a part of the estate in the hands of plaintiff as such trustee, which taxes, it is alleged, the defendant, by agreement with plaintiff, obligated himself to pay. The trial below, before the court without a jury, resulted in a judgment for plaintiff for the amount of the demand, with interest, and the defendant has appealed to this court.

In support of the issues on its part, the plaintiff introduced an agreed statement of facts, together with certain exhibits referred to therein, and the testimony of one witness, a real estate expert. In defense the defendant introduced a further stipulation as to the facts, the testimony of the defendant and that of a real estate expert. The facts thus shown, pertinent to the issues involved, we shall attempt to state with as much brevity as possible.

In 1906 Irwin Z. Smith owned a lot of ground in the city of St. Louis fronting on Sixth street, numbered 812 to 816 North Sixth street. On October 31 of that year he executed a ninety-nine-year lease upon the property to

the West End Realty Company as lessee; the term specified therein being from August 1, 1905, to July 31, 2004. By the terms of the lease a rental of $4100 per year was reserved, payable to the lessor in monthly installments of $341,66; and the lessee was required to pay all taxes upon the property, and to erect a building thereon to cost not less than $50,000. The lease further provided for a forfeiture thereof upon the failure of the lessee to pay the taxes assessed against the property or the rentals due under the lease. The lessee, the West End Realty Company, went into possession and thereafter erected a building on the lot costing, according to the testimony, approximately $60,000, and executed and disposed of a first mortgage of $12,000 upon its leasehold estate in the property. Thereafter the lessee also executed and sold a second mortgage of $16,000 on its leasehold interest.

In 1913 Irwin Z. Smith died, leaving a will. The fifth clause of the will, so far as here pertinent, is as follows:

"Fifth: But if at the time of my death there shall be living some child or children or other descendant or descendants of mine, I give, devise and bequeath all of my said property unto the St. Louis Union Trust Company, as Trustee, to be held, managed and disposed of in the manner, for the purpose, and upon the conditions following, to-wit:

"1—Said trustee shall have power and authority to invest any funds received by it under the foregoing bequest or otherwise and forming part of the corpus of the trust estate, by the purchase of such property, real, personal or mixed, as it may select for that purpose; shall have power, at any time and from time to time, to sell any property, real, personal or mixed, held by it as such Trustee to such person or persons, for such consideration or considerations, as it may approve, and the proceeds of every such sale it shall invest in some property, real or personal, to be selected by it for such purpose, which shall be thereafter held upon the same conditions and subject to the same power of sale or other dispositions as the property devised or bequeathed to it hereby; and shall

have the power whenever in its opinion the interests of the trust estate requires the use for any purpose of more funds than those on hand subject to its disposal for such purpose, to borrow money and secure the repayment of the same by mortgage or pledge of any property held by it as such trustee.

"2—Said trustee shall collect all rents, issues and profits accruing from said trust estate and pay out of the same all proper and reasonable charges upon said property and all necessary and reasonable expenses incident to the management of the same or to the execution of the trustee hereby created.

"3—The remainder of said net rents, issues and profits from said trust estate shall be held, appropriated, and used for the equal benefit of my two children, Frances and Marion, during their natural lives. . . . At the death of the survivor of my said two daughters this trust shall cease and determine, and all of said trust property and estate shall be equally divided, *per stirpes,* among my descendants then living or, if no such descendant of mine shall then survive, among my heirs at law according to the present statute of descents and distributions."

It was stipulated below that Frances and Marion, daughters of the testator named in his will, were the only children or descendants of the testator living at the time of his death; that Frances was born on October 10, 1899, and her expectancy of life was, according to the Carlisle Mortuary Tables 40.75 years, and according to the American Mortuary Tables 40.19 years, from and after October 10, 1920; that Marion was born on March 10, 1901, and her expectancy of life, according to the Carlisle Tables, was 41.46 years, and according to the American Tables 40.82 years, from and after March 10, 1920.

Some time prior to February 1, 1915, the defendant, Van Raalte, acquired the second mortgage, of $16,000, executed by the West End Realty Comany upon its leasehold estate, as lessee, in the property aforesaid; at which time, it seems, the first mortgage thereon had been reduced to $9000. On February 1, 1915, an agree-

ment in writing was entered into between the plaintiff, as such trustee, and the defendant. This agreement refers to the lease and to defendant's interest in the leasehold estate by virtue of his ownership of said second mortgage, recites that the lessee had failed to pay the rents and taxes on the property, and that it had been agreed between defendant and plaintiff that in consideration of defendant's assuming, for a limited time, the obligation to pay such rents and taxes, a reduction would be made by plaintiff in the rents to be paid under the lease, and provides that defendant obligates himself to pay all said taxes and rents then due and the taxes that might be assessed against the property while he retained the mortgage, but not beyond February 1, 1920, and to pay all rents to accrue under the lease (as modified by this agreement) while he held the mortgage, but not beyond February 1, 1920; and that plaintiff, on its part, agrees that while defendant retained the mortgage the rents under the lease should be reduced to $3600 per year, beginning on the date of the agreement and terminating on February 1, 1920, or at such prior time as defendant might cease to retain the mortgage. It was further therein agreed that if defendant's interest in the leasehold should terminate prior to February 1, 1920, by reason of his ceasing to retain the mortgage, then the agreement should be at an end, and the lessee would be required to pay the rents as provided in the lease, unless the defendant, though ceasing to retain the mortgage, should elect to remain liable for the rents and taxes until February 1, 1920, in which event the reduction in the rents should nevertheless continue to that date.

By May 29, 1916, defendant had sold the second mortgage, and on that day a further written agreement was entered into between the parties. This agreement refers to the lease upon the property, the mortgage formerly held by the defendant, and the purposes and provisions of the agreement of February 1, 1915; reciting further that the defendant had negotiated a sale of his second mortgage upon said leasehold estate, "said

sale being conditional upon the continuance of said re-
duced rental until February 1, 1920." The agreement
then continues as follows:

"And whereas, said Simon Van Raalte is willing to
remain liable for said rents and taxes until February 1,
1920, providing he may have protection to the extent
afforded by the agreements on the part of said St. Louis
Union Trust Company as trustees as hereinafter set
forth:

"Now, therefore, for and in consideration of the
premises and of the continued reduction of said rental, as
provided in said agreement, and the sum of One Dollar
($1), to him paid by said party of the second part, re-
ceipt whereof is hereby acknowledged, and of the agree-
ments on the part of said St. Louis Union Trust Com-
pany, hereinafter set forth, the said party of the first
part hereby elects to continue liable for said taxes and
rentals accrued and to accrue up to February 1, 1920,
and does hereby agree and obligate himself to pay all
taxes at any time assessed against said property which
are not or may become hereafter, prior to February 1,
1920, due and payable, and to pay all rentals that may
accrue under the terms and conditions of said indenture
of lease as modified by said agreement dated February
1, 1915, during the said period ending on the first day
of February, 1920, in the event that the lessee under said
ninety-nine-year lease fails so to do, and said St. Louis
Union Trust Company as trustees as aforesaid declares
a forfeiture of said ninety-nine-year lease as hereinafter
provided. Said St. Louis Union Trust Company, as
trustee as aforesaid, covenants and agrees that in the
event the lessee under the ninety-nine (99) year lease
aforesaid shall, at any time prior to February 1, 1920,
fail to perform or shall violate any of the covenants or
provisions to be performed by the lessee pursuant to the
terms of said agreement of lease, that it will, upon the
request of the party of the first part and within a reason-
able time thereafter, declare a forfeiture of the said
leasehold estate and of all rights of the lessee under said

ninety-nine-year (99) years lease and as soon thereafter as it shall have obtained possession of the said premises it will execute and deliver to the said Simon Van Raalte or his nominee a new lease which shall be identical in terms with the ninety-nine (99) year lease aforesaid and expire on the same date that said ninety-nine (99) year lease would have expired according to its terms, excepting, however, that the rent reserved until February 1, 1920, shall be the same sum to which said rent was reduced by virtue of the agreement aforesaid of February 1, 1915, between Simon Van Raalte and St. Louis Union Trust Company, trustee; provided that all expenses incurred by said trustee in effecting such forfeiture and obtaining possession of said premises shall be borne by the party of the first part; and said Simon Van Raalte shall thereupon continue to be personally liable for all of the rents reserved in said new lease and for taxes upon said property until February 1, 1920, and said St. Louis Union Trust Company shall declare said forfeiture within such time so that upon the execution of said new lease the lessee therein may be placed in possession of said premises without unreasonable delay.''

From the agreed statement of facts it further appears that subsequent to the execution of the agreement of May 29, 1916, the lessee failed to pay the taxes assessed against the property; that thereafter, on or about October 11, 1918, plaintiff made written demand upon defendant and the lessee that they pay such delinquent taxes, which they declined and failed to do; that on or about October 24, 1918, plaintiff paid such taxes and made written demand upon defendant that he repay the same to plaintiff. In the last mentioned communication plaintiff further notified defendant that unless the taxes were at once refunded to it plaintiff would forfeit the lease, so as to enable plaintiff to tender defendant a valid lease of the premises in accordance with the terms of the contract of May 29, 1916. Thereafter, on October 28, 1918, plaintiff declared a forfeiture of the lease, by instrument of writing of said date served on the lessee,

and the lease was forfeited and plaintiff, as such trustee, took possession of the premises and the building erected thereon. Thereafter, on or about December 28, 1918, plaintiff again unsuccessfully demanded of defendant the payment of such taxes; and on January 11, 1919, plaintiff instituted this action.

Defendant did not request plaintiff to declare a forfeiture of the lease; nor did defendant request plaintiff to execute to him a new lease in accordance with ·the agreement of May 29, 1916. Neither did plaintiff tender to defendant a new lease.

From the testimony adduced it appears that after the forfeiture of the lease plaintiff, as such trustee, rented the property to various tenants, and at the time of the trial below was receiving a gross annual rental therefrom of $10,320; and that the cost of operating the property was $3574 per year, leaving a net annual income to plaintiff therefrom of more than $6700. It further appears that the property is now worth about $85,000; but testimony in plaintiff's behalf is that property in that neighborhood is not readily salable.

For defendant there is testimony to the effect that a leasehold estate, by its terms to continue to the year 2004, but in fact subject to be terminated upon the death of the survivor of two women, aged about nineteen and twenty-one years, respectively, would be unmarketable. Defendant, on cross-examination, testified that when the taxes in suit were not paid, he went to his counsel and told him that the lease was about to be forfeited, and that his counsel subsequently advised him that plaintiff was not in a position to give him a lease; that he "wanted the property," and stood ready to pay the taxes if he got the lease.

## I.

Learned counsel for defendant, appellant here, contend that plaintiff, as trustee under the will of Irwin Z. Smith, deceased, was without power to make a valid lease of said real estate to defendant to continue to

July 31, 2004, a period of approximately eighty-eight years after the making of the contract of May 29, 1916; contending further that the agreement on the part of plaintiff to give defendant such lease, and that on the part of defendant to pay the taxes, contained in said agreement of May 19, 1916, are mutual and dependent covenants; and that since plaintiff had not the power to perform on its part by executing the lease covenanted by it to be executed, the agreement on defendant's part to pay the taxes is unenforceable.

Attending the first contention of defendant, it may be observed that though the will provides that the trust is to be "held, managed and disposed of" in the manner and for the purposes named, and that the trustee is given authority to sell property and to collect the rents, issues and profits accruing from the estate, no express power to lease real estate is conferred upon the trustee. It cannot be doubted, however, that from the powers conferred, which obviously contemplate that the estate is to be managed so as to be income producing, the power to make leases for reasonable periods, consistent with the nature and purposes of the trust, may be readily implied, as an incident reasonably necessary to the management of the trust property. But the great weight of authority is, we think, clearly in favor of the rule that, in the absence of express authority therefor conferred upon the trustee by the trust instrument, the trustee is without power to lease the trust property for a term extending beyond the life of the trust (unless it be in exceptional cases, by authority of court); and that where, nevertheless, the trustee makes a lease to continue beyond the life of the trust, the excessive period, that is the period beyond the termination of the trust, will, as a rule, be held to be void. [See: In re Hubbell Trust, 135 Iowa, 637; South End Warehouse Co. v. Lavery, 12 Cal. App. 449; Standard Metallic Paint Co. v. Prince Mfg. Co., 133 Pa. St. 474; Bergengren v. Aldrich, 139 Mass. 259; In re 110th Street (Cram v. Dietrich), 81 App. Div. (N. Y.) 27; 81 N. Y. Supp. 32; Hutcheson v. Hodnet,

115 Ga. 990 In re Hoysradt, 45 N. Y. Supp. 841; Gomez
v. Gomez, 31 N. Y. Supp. 206; 147 N. Y. 195; In re
McCaffrey's Estate, 3 N. Y. Supp. 96; In re Shaw's
Trusts, 12 Eq. Cases 123; Wood v. Patterson, 10 Beav.
541; 26 R. C. L., p. 1301, secs. 154, 155; Bogert on Trusts,
p. 314.]

In the Hubbell Trust case, supra (135 Iowa, l. c.
664, 665) the court, after an exhaustive review of the
authorities, sums up the law touching the matter as
follows:

"(1) The trustees may lease for such reasonable
terms as are customary and essential to the proper care
of and to procure a reasonable income from the property.
(2) Such terms should not, save on showing of reason-
able necessity to effectuate the purposes of the trust,
extend beyond the period the trust is likely to continue.
(3) Should they extend unreasonably beyond such period,
the excess only will be void. (4) Only upon a showing
of such reasonable necessity, when not given such power
by the instrument creating the trust, will the trustees
be authorized to bind the estate so as to effectually de-
prive those ultimately entitled thereto of the property
itself."

In the instant case we regard it as clear that, under
the law, the powers conferred on the trustee by the will
did not clothe the trustee with power to execute a lease
such as that contemplated by the agreement of May 29,
1916, to continue to 2004, many years beyond the probable
duration of the lives of the testator's daughters.

Plaintiff contends, however, that had defendant re-
quested plaintiff to execute this lease, plaintiff doubt-
less could have obtained the decree of a court of equity
authorizing the execution thereof. But, granting that
defendant would have been required to await the out-
come of a proceeding seeking a decree of this character,
we are of the opinion that, under the circumstances, the
authorization of the execution of such lease would have
been in excess of the legitimate powers of a court of
equity in the exercise of its supervisory jurisdiction over

the trust. We shall refer briefly to the authorities cited by plaintiff.

In Marsh v. Reed, 184 Ill. 263, the court authorized the trustee to execute a lease for a period exceeding the limitation in the will, finding that the trust property would otherwise be substantially unproductive, defeating the donor's purpose to provide an income for his children; holding that the ruling was warranted on the ground of necessity for the preservation of the trust.

In Denegre v. Walker, 214 Ill. 113, the will gave the trustees power to "care for, rent and manage" the property. The court, on the authority of Marsh v. Reed, supra, (the adult parties in interest consenting) authorized the execution by the trustee of a ninety-nine-year lease; holding that it was to the best interests of the estate, and that the will "gave the trustee, under the direction of a court of chancery (if not without its aid), power to make the lease."

Of the two last-mentioned cases the Supreme Court of Iowa in the Hubbell Trust case, supra, observes: "It will be noted that in no case to be found in the books, save Denegre v. Walker, supra, has a lease by trustees for ninety-nine years unless expressly authorized been approved in the absence of other controlling circumstances as in Marsh v. Reed, supra. Aside from these decisions, and their weight as authority is somewhat impaired by having ignored all other cases on the question, our attention has been directed to no authority necessarily inconsistent with the theory advanced by appellees, that the trustees are without power to bind the estate beyond the termination of the trust." And as to the ruling in Denegre v. Walker, supra, the Iowa court further says: "The farthest any court previously had gone was to approve long-term leases when essential for the preservation of the trust property, or reasonably necessary to carry out the purposes of the trust, and not likely to extend considerably beyond its termination, but these grounds seem to have been ignored in the last case,

and what appeared to have been a good business venture indorsed without other support in so doing."

In Packard v. The Illinois Trust and Savings Bank, 261 Ill. 450, decided since the decision in the Hubbell Trust case, supra, a ninety-nine-year lease had been executed by the testator, as lessor, upon the premises in question, which were occupied by an apartment building erected by the lessee. After the death of the testator the neighborhood changed in character, becoming a manufacturing district, and the income from the property had become less than the expenses incident thereto. Though the will did not confer such power upon the trustee, the court authorized the trustee to make a new ninety-nine-year lease requiring the lessee to alter the building and subsequently erect a new mercantile building on the premises. The court held that where exigencies have arisen which will practically defeat the will of the testator, a court of equity "has jurisdiction to meet the situation by making such provisions as will accomplish the purposes of the testator and which it is apparent he would have made if he had contemplated the changed conditions."

In Re Upham, 152 Wis. 275, 48 L. R. A. (N. S.) 1004, the court authorized the trustees to execute a lease to continue beyond the life of the trust, holding that the will, giving the trustees "entire control, management and charge of the estate," conferred upon them very broad powers—"almost unlimited power of administration;" that the execution of the lease was to the best interest of the estate, and, though for a term of ninety-nine-years, was a reasonable exercise of the powers conferred upon the trustees, under the circumstances.

In the instant case the facts stated above show that there was here no exigency rendering the execution of such lease necessary for the preservation of the property or for effectuating the intention of the testator with regard to the purposes of the trust. In forfeiting the lease to the West End Realty Company in 1918, and obtaining

possession of the premises and the improvements placed thereon by the lessee, the trustee obviously acted within the line of its duty. And the evidence shows that at the time of the trial the trustee was receiving a net annual income of $6700 from the property. It cannot be said that there was any imperative need of placing a lease upon the property to continue to the year 2004 at an annual rental of $3600. True it is that the testator had placed a ninety-nine-year lease upon the property, but it does not follow that the trustee, whose powers are derived from the trust instrument, had like authority in the premises. If the testator had desired to confer such power upon the trustee it would have been very easy to have so provided in the will. And it will not do to say that because the testator had placed a long term lease upon the premises, reserving an annual rental of $4100, the trustee might execute a lease for the remainder of such term, extending far beyond the probable life of the trust, at a much reduced rental, or, indeed, upon any terms.

As to the failure of defendant to request the execution of the lease to him, it need only be said that, in our view of the case, such request (if otherwise requisite in view of plaintiff's notice to defendant of October 24, 1918) would have been an idle ceremony, since plaintiff had not the power to comply therewith.

## II.

We come, then, to the second contention of defendant, viz., that the agreement of plaintiff to execute to defendant the new lease and that of defendant to pay the taxes, in the contract of May 29, 1916, are mutual and dependent covenants. For plaintiff it is argued that, by this contract, plaintiff, in consideration of defendant's agreement to pay the taxes and rentals made two distinct and separate agreements, one an absolute agreement to reduce the rentals, and the other a conditional agreement to declare a forfeiture of the then existing lease and execute to defendant a new lease, if defendant so

requested; and that the agreement on plaintiff's part "by which the defendant was given the option or right to demand that plaintiff should declare a forfeiture of the then existing lease and execute a new lease to him was an independent covenant and that its performance by plaintiff was not a condition precedent to its right of action against the defendant for breach of his covenant to pay the taxes.

Whether a particular covenant in a contract is independent or the respective covenants of the parties mutual and dependent, is not always a question of easy solution. Many of the older cases were decided, apparently without due regard to the intention of the parties, upon rules and distinctions more or less artificial and technical, many of which would not now be regarded as controlling. The broad modern doctrine that the question is one to be determined primarily by arriving at the intention of the parties, and that covenants are to be regarded as prima facie concurrent, has largely done away with these subtle niceties and greatly impaired the force and effect of the arbitrary rules formerly applied. Plaintiff invokes, as applicable to the facts of this case, the rule applied by Lord MANSFIELD in Boone v. Eyre, 1 H. Bl. 273, and which has been frequently recognized and applied in later decisions. It is thus formulated in Turner v. Miller, 59 Mo. 526, viz.:

"Another rule is that where the covenant goes only to part of the consideration of both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and consequently an action may be maintained for a breach of such covenant on the part of the defendant without averring performance of other covenants on the part of the plaintiff."

In this connection see also: Watson Window Company v. Weiss Cornice Co., 181 Mo. App. 318, 168 S. W. 905; Cluley-Miller Coal Co. v. Freund Packing & Manufacturing Co., 138 Mo. App. 274, 120 S. W. 658; Kaufman v. Raeder, 108 Fed. 171, 54 L. R. A. 247.

But, "like other rules of construction, including the rules for determining the relation of two covenants to each other, this is not an arbitrary rule, but merely a guide to enable the courts to ascertain the intention of the parties; and if the contract, when taken as a whole, shows that the parties intended that the performance of one covenant shall depend upon the performance of the other, such other is a dependent covenant even if it forms only a part of the consideration." [5 Page on Contracts, sec. 2574.] We do not think that the rule is here controlling. As indicated above, the question for decision in such cases is one to be determined by the intention of the parties to be found from a rational interpretation of the contract in the light of the usual rules of construction. In Lincoln Trust Co. v. Nathan, 175 Mo. 32, l. c. 47, (74 S. W. 1007), our Supreme Court said:

"In all cases, however, the question must be decided 'according to the intention and meaning of the parties, and the good sense of the case,' as Judge NAPTON said in Freeland v. Mitchell, supra, (8 Mo. 488), or it must 'be determined in each particular case by inferring, with as much certainty as possible, the meaning and purpose of the parties; from a full survey, the rational interpretation of the whole contract,' as Judge WAGNER said in Wellman's Admr. v. Dismukes, 42 Mo. l. c. 105." [See also: Curran Printing Co. v. St. Louis, 213 Mo. 22, l. c. 36, 111 S. W. 812; Watson Window Co. v. Cornice Co., supra, l. c. 326; Cluley-Miller Coal Co. v. Packing & Manufacturing Co., supra, l. c. 282; Daly v. City of Carthage, 143 Mo. App. 564, l. c. 509, 128 S. W. 265; Boulware v. Crohn, 122 Mo. App. 571, l. c. 581, 99 S. W. 796; Springfield Seed Co. v. Walt, 94 Mo. App. 76, 67 S. W. 938; O'Neill v. Webb, 78 Mo. App. 1; Turner v. Mellier, supra, l. c. 536; Loud v. Pomana Land & Water Co., 153 U. S. 564; Southern Colonization Co. v. Derfler, 73 Fla. 924, L. R. A., 1917 F., 744; 6 R. C. L., pp. 860, 861, sec. 248; 5 Page on Contracts, sec. 2974.]

In the case before us we think that, having regard to the intention of the parties to be gathered from the contract, these covenants must be held to be mutual and

dependent. A familiar rule of construction is that the contract should be construed as a whole, giving effect to all of the words thereof where this may be done. Viewing this contract of May 29, 1916, as a whole, it appears that defendant was willing to agree to remain liable for the rents and taxes until February 1, 1920, provided he could have the "protection to the extent afforded by the agreements on the part of the St. Louis Union Trust Company as trustee," as set forth in the contract. And the contract recites that defendant's agreement to remain liable for the rents and taxes is made in consideration of both the continued reduction of the rents and "of the agreements on the part of the St. Louis Union Trust Company hereinafter set forth." The agreements of the trustee thereinafter set forth were that it would, on the request of defendant, declare a forfeiture of the lease, and as soon as it had obtained possession of the premises would execute and deliver to defendant or his nominee the new lease. We think that by the very terms of the contract it is made manifest that the intention of the parties was to obligate defendant to stand liable for the payment of these rents and taxes only upon condition that he have the protection that would be afforded him in the premises by the full performance by plaintiff of the things agreed to be performed by it. In this connection it may be noted that under the prior contract between the parties, of date February 1, 1915, defendant, though he had disposed of his mortgage, had the right to require plaintiff to keep the rents reduced to $3600 per year until February 1, 1920, provided defendant elected to remain liable for the rents and taxes. Had defendant been willing to so obligate himself, in consideration alone of the continued reduction in the rents to February 1, 1920, the agreement of May 29, 1916, would have been wholly unnecessary. But evidently defendant was not willing to incur such liability unless he could be protected by plaintiff's agreement to give him the new lease for the unexpired term of the old lease, at the reduced rental. From the testimony adduced it may be

readily inferred that such new lease, at the reduced rental, would have been valuable to defendant as lessee, affording him reasonable protection in the premises; and we think that it clearly appears that unless he was to have such protection there was no intention that liability for the rents and taxes should be fastened upon him.

In our view, plaintiff's agreement respecting the execution to defendant of the new lease was not "a subordinate covenant incidental to the main purpose of the agreement," as in Kaufman v. Raeder, supra, but a very vital consideration operating as an inducement for defendant's agreement to stand liable for the rents and taxes. And under such circumstances defendant ought not to be held liable on his agreement if plaintiff lacked the power to carry out the contract on its part. [See: Boulware v. Crohn, supra.] Where the stipulations of a contract are mutual and dependent, before one party may recover as for the other party's breach, he must show performance on his part or that he is ready, able and willing to perform. And under the circumstances here present, we think that the fact that defendant did not request the execution of the new lease does not prevent the application of this rule to the instant case, for, as we have held above, such request would have been futile, since plaintiff, had it attempted to comply therewith, had not the power to give defendant that which it had contracted to give him.

It follows that the judgment below should be reversed, and it is so ordered. *Becker* and *Daues, JJ.,* concur.