THE CLULEY-MILLER COAL COMPANY, Appellant, v. THE FREUND PACKING & MANUFACTURING COMPANY, Respondent.

Kansas City Court of Appeals, June 14, 1909.

1. **CONTRACT: Sales: Delivery to Carrier.** Where a contract for the sale of coal provided that the coal should be shipped over a certain railroad, but both parties knew that such road did not reach the point of shipment and could not receive the coal until it arrived at St. Louis, delivery of the coal by the plaintiff to the only carrier to which delivery could be made constituted delivery to defendant.

2. ——: **Breach.** Inability of a party to a contract to perform its conditions affords no excuse in law for his failure to perform them.

3. ——: ——. The breached condition of the contract was in the nature of an independent covenant, and defendant was not justified in refusing the coal but should have accepted it, relying on its right to recover damages from plaintiff sustained in consequence of the breach.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

REVERSED AND REMANDED.

*Perry A. Brubaker* for appellant.

The title passed when the coal was delivered at the mine, no matter what carrier was chosen, and upon presentation of draft respondent became liable under its contract. 1 Benjamin on Sales (1884 Ed.), 466, sec. 517. The contract in this case was what is termed in legal terms a "sale," and the interpretation of the contract depends upon intention of the parties, and the intention of the parties means there should be a Rock Island delivery. Freeland v. Mitchell, 8 Mo. 487; Railroad v. Insurance Co., 49 U. S. 759; Hayden v. Railroad, 117 Mo. App. 95; Boulware v. Crohn, 122 Mo. App. 580;

Southern L. Co. v. Mer. & Sup. Co., 89 Mo. App. 141; Fairbanks, etc., Co. v. Mining Co., 105 Mo. App. 644; Scharf v. Mayer, 133 Mo. 428; Turner v. Mellier, 59 Mo. 526; Springfield Seed Co. v. Walt, 94 Mo. App. 76; 2 Benjamin on Sales (3 Ed.), p. 738. The interpretation the parties put on the contract at the time is to be taken into consideration. St. Louis v. Laclede Light Co., 155 Mo. 1; Comstock v. Fowler, 109 Mo. App. 275; Topliff v. Topliff, 122 U. S. 121; Jones v. De Lassus, 84 Mo. 541; Sedalia Brew. Co. v. Sedalia W. Co., 34 Mo. App. 49. The court excluded proper and legal evidence offered by appellant, in regard to what the term "via Rock Island" meant in a telegram, under such circumstances, when it was competent, and also what was the "custom" in that business. Earl Fruit Co. v. McKinney, 65 Mo. App. 220. The court excluded proper and legal evidence, offered by plaintiff, as to the rules and regulations of carriers, and especially in regard to connecting carriers. State ex rel. v. Kinloch Tel. Co., 93 Mo. App. 349.

*Easton & Corby* for respondent.

It is certainly a well-settled rule of law in this State that failure to deliver goods ordered to the agent named by the buyer is not a delivery. In an action on a contract for the purchase price of goods sold where the place of delivery is named in the contract plaintiff must both allege and prove a delivery, or a tender of delivery at the place named in the contract, or a sufficient excuse for a non-tender. Fairbanks, Morse & Co. v. Mining and Manufacturing Co., 105 Mo. App. 644. Before a plaintiff can recover for a breach of the contract of a sale he must show a performance of all conditions precedent or acts concurrent. Lumber Co. v. Lumber & Supply Co., 89 Mo. App. 141. Before there can be a recovery by a plaintiff for breach of contract it is incumbent upon it to prove performance of all conditions pre-

cedent or acts concurrent.    Denny v. Kile, 16 Mo. 450;
Turner v. Mellier, 59 Mo. 526; Larimore v. Tyler, 88 Mo.
661; Doyle v. Turpin, 57 Mo. 84.

JOHNSON,   J.—Plaintiff brought this suit to re-
cover the purchase price of two cars of coal which the pe-
tition alleges were sold and delivered to defendant.   The
answer is a general denial and the defense is that the
evidence of plaintiff fails to show a delivery of the coal
in accordance with the terms of the contract of sale.
A jury was waived, evidence was introduced by plain-
tiff, but no evidence was offered by defendant.    After
holding the case under advisement, the court sustained
a demurrer to the evidence and rendered judgment for
defendant.    Plaintiff appealed.

Plaintiff is a corporation engaged in the business
of mining and selling coal.    Its principal office is in
St. Louis, and its mines are at Belleville, Illinois.   De-
fendant is a corporation in the packing business at St.
Joseph and is a consumer of coal.    The contract which
gave rise to the controversy consists of the following
telegrams and letters:

Telegram from defendant to plaintiff dated April
20, 1906:    "Ship us two cars Illinois mine run three
thirty-five per ton f. o. b. cars St. Joseph.    Answer
quick."    Telegram plaintiff to defendant, sent April
21st:    "Your wire can ship two mine run today one
thirty mines.    Rate two dollars five ton guaranteed
terms sight draft bill lading attached.    Answer and
wire routing quick."    Telegram defendant to plaintiff,
dated April 21st:    "Answering message ship two cars
mine run via Rock Island."    Letter of plaintiff to de-
fendant April 21st:    "We are in receipt of your wire
accepting terms for shipment of two cars of mine run
coal and have this day shipped you cars 19720 and 19729
C. & A. R. R.    This coal is routed via C. & A. R. R.
and C. R. I. & P. R. R., and ought to make prompt

movement.    Trusting you will find same satisfactory, we are, yours truly."

The coal was loaded in C. & A. cars April 21st and was delivered at Belleville to the L. & N. R. R. for transportation to St. Joseph.    It arrived at East St. Louis 22d and there was delivered by the L. & N. to a terminal railroad.    It was taken across the Mississippi river, April 26th, and delivered to the C. & A. railroad company at St. Louis.    No bill of lading issued by the Louisville & Nashville (L. & N) railroad company appears in the record, but one issued by the Chicago & Alton (C. & A.) company was introduced in evidence. It provides for the transportation of the shipment from East St. Louis "to St. Joe, Mo., via St. Joe and Grand Island, care of C. R. I. & P.," and the rate given is "special $1.80 per net ton."    The Chicago & Alton railroad company carried the coal to Kansas City and delivered it to the St. Joseph and Grand Island railroad company under some traffic arrangement between the two companies, the nature of which is not disclosed. The Grand Island company transported the coal to St. Joseph and tendered it to defendant, May 1st.    Defendant refused to receive it or to pay the draft drawn by plaintiff for the purchase price.    The reasons assigned for the refusal appear in a letter from defendant to plaintiff, dated May 8th, as follows:

"Referring to your telegram received this p. m. asking why your two cars coal were refused, beg to advise that when we ordered same, we were desperate for coal and we wired you asking if you could ship us two cars immediately, and you advised us you could, and stated further that it would go forward on the 21st of April via C. & A. and R. I. Ry. Our shipping instructions were via R. I. and finally after waiting a week we had to shut down our ice plant for lack of fuel, although during the few days prior to our having to take this step, we had been offered coal, but fearing yours would arrive, as it was past due then we did not buy any, not thinking for

a minute that your coal would be on the road two weeks. It did not arrive until May 2nd, and then it came via the St. Joe and G. I. Ry., and we were endeavoring to trace same through the R. I. and I am certain they sent 7 or 8 messages trying to locate it. You can readily see that we were placed in a serious position by someone's neglect, for had we not been advised that the coal would be shipped via R. I. we could have asked the other roads.

"Now that coal is plentiful and much cheaper we do not feel bound in any sense to use this coal, though we dislike very much to have to decline same but we feel we are justified, and if we can assist you in disposing of same we will gladly do so."

The terms "C. R. I. & P.," "Rock Island" and "R. I." refer to the Chicago Rock Island & Pacific Railroad Company, commonly called the "Rock Island." That company operates a road from St. Louis to St. Joseph, but has no line to Belleville. The Louisville & Nashville is the only railroad over which westbound shipments of freight can be made from Belleville and that line has its western freight terminus at East St. Louis. A line of the Chicago & Alton railroad runs from St. Louis to Kansas City—its western terminus.

Defendant contends that the shipping instructions given in its telegraphic order required the coal to be delivered to the Rock Island at St. Louis, while plaintiff argues that under all the facts and circumstances of the case, the instructions must be interpreted to mean the selection by defendant of the Rock Island as the delivering carrier at St. Joseph and in routing the shipment for delivery to the Rock Island at St. Joseph and giving to that company the terminal switching to defendant's plant, the instructions were followed literally as well as in substance. To support its position, plaintiff offered evidence to the effect that it was compelled by the Louisville and Nashville company to load the coal in cars owned by a trans-Mississippi railroad company; that no "Rock Island" cars were available;

that as there was urgent need of prompt shipment, it used C. & A. cars, and that a rule of the carriers compelled the delivery of the cars to the Chicago & Alton company at St. Louis.    The rule thus is stated in the testimony of one of the witnesses:

"Q.   Do you mean to say that it is an impossibility for you to deliver a shipment of coal to the Rock Island at St. Louis?    A.   Not a shipment, this shipment.   Q. Do you mean to state that you could not deliver this shipment at St. Louis?    A.   I do. ˙ Q.    How do you know you could not, did you try?    A.   We did not try but it is a ruling of the lines east of the Mississippi River to reciprocate with the railroads on the west side with regard to their cars, and any cars of a foreign road located on the L. & N. R. R. must be delivered to the road to which they belong, or some of its connections where the destination will be over the rails of the road owning the cars."

Further, the same witness testified:   "Q.   What does 'Route via Rock Island' mean in your business? A.   It might mean by the way of the Rock Island at Kansas City, St. Joseph, or any other point at which we are able to deliver to the Rock Island."

The trial court struck out the testimony we have quoted and, we think, properly.    The fact that plaintiff could not obtain Rock Island cars at Belleville gave it no right to divert the shipment from the route prescribed in the contract.    Plaintiff undertook to forward the coal promptly via the Rock Island.    It should not have accepted the order if it could not perform the terms and conditions of the contract.    Mere inability of a party to a contract to perform its conditions affords no excuse in law for his failure to perform them.    The diversion of the shipment from the Rock Island to the Chicago & Alton constituted a breach by the plaintiff of one of the conditions of the contract.    It is idle to say that the route selected by plaintiff which contemplated that the cars should not be delivered to the

Rock Island until they reached St. Joseph, their destination, complied with the shipping instructions embodied in the contract. The manifest intention expressed in the term "ship . . . via Rock Island" meant that the Rock Island should receive the cars at St. Louis, the railroad center nearest to Belleville, through which the shipment had to pass. The initial carrier and the Rock Island met at that center and the evidence of plaintiff shows that practically it was the only place at which the transfer could be made without loss of time and additional expense. But does it follow that this breach of the contract by plaintiff justified the refusal of defendant to receive the coal at St. Joseph? We might answer this question in the affirmative under facts and circumstances different from those in the record before us. Had it appeared that the Rock Island company had a line into Belleville, we would say that a contract calling for delivery of the coal f. o. b. cars at Belleville to that company would constitute it the only agent of defendant to which delivery could be made, and we would sanction the position of defendant outlined in their brief:

"In the case at bar the appellant had no right under the contract to make the shipment C. & A. via St. J. & G. I. The shipping of the coal over the route designated by respondent and the delivering of the coal to the Rock Island, its designated agent, were requirements of the contract in the nature of conditions precedent, and since these were not performed the appellant is in no position to complain of respondent's refusal to accept the cars and pay the contract price.

"The plaintiff could not substitute a different kind of performance from that required by the contract without defendant's consent. It could not, without the concurrence of the defendant, make a new contract between them or rescind that previously made. It may have been that from plaintiff's point of view the substituted performance tendered by it was quite as beneficial to

Coal Co. v. Packing & Mfg. Co.

defendant as that required by the contract, yet the defendant was not bound to accept it, but still had the right to exact the performance required by the contract."

But the facts before us compel us to hold that the breached condition of the contract was in the nature of an independent, not a dependent covenant, and, therefore, that defendant was not justified in refusing the coal, but should have accepted it relying on its right to recover damages from plaintiff sustained in consequence of the breach. "Where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other. But where they only go to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent." [Boone v. Eyre, 1 h. Bl. 273.]

In discussing this rule, Judge SANBORN said, in Union Pac. Ry. Co. v. Insurance Co., 83 Fed. 676:

"The breach of a covenant of the first class—a dependent covenant, which goes to the whole consideration of the contract—gives to the injured party the right to treat the entire contract as broken, and to recover damages for a total breach. . . . But a breach of a covenant of the second class—a covenant which does not go to the whole consideration of the contract, and is subordinate and incidental to its main purpose—does not constitute a breach of the entire contract, or put an end to the agreement, but the injured party is still bound to perform his part of the contract, and the only damages he can recover consist in the difference between the amount which he actually received or lost, and the amount he would have received or lost if the broken covenant had been kept."

The same doctrine was announced by the Supreme Court of this State in Turner v. Mellier, 59 Mo. l. c. 535:

"The general rule is, that where covenants on the part of the different parties are to be performed at different times, they will be considered to be independent covenants, and a breach of one can be sued for without alleging or proving the performance of the other.   Another rule is, that where the covenant goes only to part of the consideration of both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and consequently an action may be maintained for a breach of such covenant on the part of the defendant without averring performance of other covenants on the part of the plaintiff.   .   .   .   The dependence or independence of covenants is generally to be construed according to the intention of the parties."

In ascertaining the intention of the parties to this contract, necessarily we must place ourselves in their situation.   Both knew that the Rock Island does not reach Belleville and could not receive the coal until it arrived at St. Louis.   Consequently, the position of defendant that the Rock Island was its designated agent to receive the delivery at Belleville is untenable.   The contract provided for delivery at Belleville, and delivery at that place to the carrier authorized by defendant to receive the coal constituted a delivery to defendant. The Louisville & Nashville railroad was the agent of defendant because it was the only carrier to which delivery could be made, and since it was such agent, delivery to it, though not made in full compliance with the shipping instructions, nevertheless constituted delivery to defendant.   The coal became the property of defendant at Belleville, subject only to the right of stoppage in transitu, and defendant's refusal to receive it at St. Joseph was but a refusal to take charge of and have dominion over its own property.   It follows from what we have said that plaintiff is entitled to recover the contract price of the coal and that defendant, under proper pleadings, is entitled to recover from defendant the damages, if any, it sustained as a result of plain-

tiff's breach of an independent condition of the contract.

The judgment is reversed and the cause remanded. All concur.