**E. H. Irwin, Trading as E. H. Irwin & Co., Defendant in Error,
v. W. J. Kelly and Horace Train, Trading as Kelly & Train,
Plaintiff in Error.**

### Gen. No. 16,756.

**1.** DAMAGES—*failure to deliver coal.* Where plaintiff who had an order for coal from one of his customers contracted with defendants for delivery to the customer, part to be shipped immediately and remainder as quickly as possible, and defendants delay the order for several months so that the customer is entitled to and does cancel the order, defendants are liable to plaintiff for the difference between the contract price with them and the price to the customer.

**2.** CONTRACTS—*shortage of cars not excuse for failure to perform.* In an action for damage from defendants' failure to deliver coal contracted for, it is not a legal excuse that there was a shortage of cars or that the price at which defendants could get the coal was too high.

**3.** SALES—*distinction between sales and brokerage transaction.* Where plaintiff who has an order for coal from one of his customers enters into a contract with defendants for delivery to the customer, there is a sale and not a brokerage transaction, and the fact that plaintiff made defendants his agents to collect the selling price does not alter the transaction.

**4.** PRACTICE—*not error to dispose of motion for new trial without argument.* Where the cause has been fully tried by the court without a jury, it is within his legal discretion to dispose of a motion for new trial at once although requested to hear argument.

Error to the Municipal Court of Chicago; the HON. W. W. MAXWELL, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed December 30, 1912.

EASTMAN, EASTMAN & WHITE, for plaintiff in error.

HARRY A. DAUGHERTY, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The judgment attacked by this writ of error is for $116.29. It was entered by the Municipal Court of Chicago, June 18, 1910, in favor of the plaintiff below

(the defendant in error here), E. H. Irwin, against the defendants below, W. J. Kelly and Horace Train (who are the plaintiffs in error here), who did business under the firm name of Kelly & Train. The trial below was by the court without a jury.

The plaintiff, who did business under the name of E. H. Irwin & Co., was a dealer in coal in Chicago, buying and selling coal as an independent dealer. His dealings, however, were frequently of the following nature. Receiving orders for coal at such prices as he could secure, he would buy at a less price from other dealers and order the coal shipped directly by such other dealers to his customers. His payments to the concerns from whom he bought would be delayed until he received the purchase price from his customers, when he would remit to the shippers the price which he had agreed to pay them, retaining the remainder as his profit.

In the transactions which led to this suit, however, a different course was pursued, resulting from an agreement between the parties. Irwin received orders from the firm of Elijah & Winne in Palo, Iowa, for 22 carloads of Hocking rescreened three-inch coal. This coal he ordered from the defendants by three orders (verbal and written) of December 16, 20 and 23, 1909, respectively. The letter of E. H. Irwin & Co. to Kelly & Train of December 20, 1909, relating to six of these 22 carloads shows the arrangement or agreement originally proposed about them all. It ran:

"Confirming conversation this morning, please enter our order for six more open cars of the Hocking rescreened three-inch lump coal at $1.50 per ton f. o. b. cars at mines, to be consigned to Elijah & Winne, Palo, Iowa, via the C., R. I & P. Ry. from Chicago, to be all shipped this week and if possible at the rate of one or two cars a day. Please give us car numbers promptly as possible.

"We hereby agree and promise to pay you for this coal just as fast as we collect for it, and that the money received from coal shipped by you on our orders shall

not be applied to the payment of any other accounts, but just as soon as we receive checks in payment we will send you our checks, retaining our profit only."

But the following letter of Kelly & Train to E. H. Irwin, written four days later (December 24th) shows how this arrangement was changed:

"Confirming conversation in our office today, in consideration of your allowing us to invoice our coal shipments on your orders and collect for same, we hereby agree to remit you your profit or commission as soon as settlements are received from the customers, and further agree not to follow up any of your customers, and if they ask us for prices we will quote them at prices allowing you at least ten cents per ton commission and fifteen cents per ton when you so advise, and on all such orders will also remit your profit as soon as settlement is received.

"Cars 9481-16213-26547 and 26804, which you have already invoiced to Elijah and Winne and Sunderland Bros. Co. respectively, you may collect for and remit us when you receive settlement from the parties.

"Yours truly,
"Kelly & Train,
"Per H. C. Train.

"We hereby accept and will fill your orders of 'Dec. 16th to 6 cars to Palo, Iowa, and 6 cars, Dec. 18th to Palo, Iowa, and Dec. 22d, 10 cars to 'Palo, Iowa, all for Elijah and Winne and all to be Hocking re-screened three-inch coal at $1.50 f. o. b. cars mines to you.

"Kelly & Train."

Four of the cars which the plaintiff ordered the defendant to ship to Elijah & Winne were duly shipped. The remaining eighteen were never shipped.

After two months and a half, during which time there were repeated inquiries and demands by the plaintiff of the defendants that they should fill the orders and ship the remaining eighteen cars to Elijah & Winne, and excuses by the defendants that there was a car shortage and that therefore they could not afford to pay the price demanded by those who had such coal on hand, the plaintiff on March 4, 1910, wrote

the defendants complaining of the nonfulfilment of the orders, and adding:

"Our commission on the four cars you shipped is $19.23, of which you have paid us $10, and on the basis of 40 tons average weight per car our commission on the remaining 18 cars amounts to $106.85, making a total due us for commission on these sales of $126.08, or a balance due of $116.08, and we shall look to you for payment of same."

This seems to have led to immediate correspondence between the defendants and Elijah & Winne, for on March 7th, Elijah & Winne wrote to the defendants:

"Answering your favor of the fifth instant, we will not be able to handle the Hocking of which you speak, owing to the lateness of the season. You will please cancel all orders we may have with you at present."

Shortly afterward the plaintiff brought this suit.

In view of the fact that the order of the plaintiff to the defendants of December 16, 1909, for six cars specified "immediate shipment," that of December 20th for six cars directed that they be all shipped "this week and if possible at the rate of one or two cars a day," and that of December 23d for ten cars required "shipment as quickly as possible," we think that the consignees, Elijah & Winne, were within their rights in canceling the orders and refusing to receive the coal at that late date, and that it follows that the failure to consummate the sale and receive the purchase price from the consignees being the fault of the defendants solely, it did not relieve them from liability to the plaintiffs for the difference between the contract price to them and the price to Elijah & Winne. To hold otherwise would be to allow the defendants the benefit of their own wrong.

That there was a shortage of cars or that the price at the mines or elsewhere for which the defendants could buy the coal, furnished them no legal excuse. No such exception was made when they undertook to fill the orders. To allow such an excuse as valid would

be to abrogate the sale. That the transaction between the plaintiff and defendants was a sale and not a brokerage transaction we think clear. Neither the use of the words "or commission" as the alternative of "profit" in the letter of the defendants to the plaintiff of December 24th, nor the further use of the word "commission" in that letter and in that of the plaintiff to the defendants of March 4, 1910, alters the actual nature of the transaction, which was a sale by the defendants to the plaintiff of certain coal which the plaintiff ordered shipped to his customers. The plaintiff's interest in the sale sprang from the "profits"—the difference between his buying and his selling price. Nor does the fact that he in effect, apparently for their security, made the defendants his agents to collect the selling price, alter the nature of the transaction.

As this is our view, we need not discuss the defense made that the contract was between the plaintiff and the defendants invalid and unenforceable because the plaintiff had no license from the city to do a brokerage business.

Complaint is made that the court refused to set down for hearing a motion for a new trial made by the defendant after the finding of the issues for the plaintiff, but "overruled the same immediately without argument," although "requested to hear argument."

The cause was fully tried by the judge without a jury, and the view of the law and facts propounded by the defendants fairly laid before him in that trial. He was not obliged by the law to try it twice or to hear it argued twice. It was entirely within his legal discretion to dispose of the motion made by the defendant at once. There was nothing *"pro forma"* in that action. There was no dispute made about the amount due on the assumption the defendants were liable at all.

The judgment of the municipal court is affirmed.

*Affirmed.*