INDIANAPOLIS ABATTOIR COMPANY *v.* PENN BEEF COMPANY.

[No. 11,896. Filed June 26, 1924. Rehearing denied October 17, 1924. Transfer denied May 20, 1925.]

1. PLEADING.—*Memorandum with demurrer held too indefinite to present sufficiency of contracts under statute of frauds.*— Memorandum with demurrer stating that contracts which were the basis of the complaint were unenforceable because none of the property had been delivered, nothing given in earnest or part payment, no sufficient memorandum of bargain made and signed by party to be charged, *held* too indefinite to present

Indianapolis Abattoir Co. *v.* Penn Beef Co.—83 Ind. App. 144.

question of insufficiency of contracts under the statute of frauds (§8049 Burns 1926, §7469 Burns 1914, §4910 R. S. 1881). p. 150.

2. SALES.—*Seller undertaking to deliver without reservation or condition not relieved from performance by strike of railroad employees.*—Where the seller contracted, without limitation, exception or condition, to deliver a carload of cattle to the buyer at a specified time, he cannot be relieved from performance by a strike of railroad employees, since he can be excused only by the act of God or of a public enemy or by express law. p. 152.

3. APPEAL.—*Exception to conclusion of law is in the record on appeal when part of same entry as special finding and conclusion of law.*—An exception to a conclusion of law is properly a part of the record where the exception is part of the same entry as the special finding and conclusion of law. p. 153.

4. SALES.—*Contract of sale confirmed and consummated in city of buyer's domicile held to require delivery in that city.*—In the absence of the designation in the contract of the place of delivery, such place is generally that of the place where the goods were at the time of sale, and this will generally be the place of business of the seller, but where the contract was finally confirmed and consummated in Philadelphia at the office of the agents of the buyer in said city, it will be held to be the place of contract and delivery. p. 154.

5. SALES.—*Finding of buyer's readiness and willingness to receive and pay for goods on delivery essential in action for nondelivery.*—In an action for breach of a contract of sale by failure to deliver the goods sold, it is necessary to aver and prove that the buyer was ready and willing to receive and pay for the goods on delivery according to the contract, and this proof being material, a conclusion of law that plaintiff was entitled to recover was erroneous where there was no finding of that fact. p. 155.

6. SALES.—*Special finding of buyer's willingness to receive and pay for goods essential to his recovery in action for nondelivery.*—In all actions by buyer for breach of executory contract for sale of goods in not delivering them, a special finding that he was ready and willing to perform his part of the contract by receiving and paying for the goods is essential to a conclusion of law that he is entitled to recover. p. 155.

7. SALES.—*Payment of price not implied from finding that defendant "sold" the goods to plaintiff.*—In an action by buyer for damages for nondelivery of goods sold, a finding by the court that the defendant "sold" the goods to the plaintiff does

not imply that the price had been paid (*Pennsylvania, etc., Sup. Co.* v. *Fosnotte,* 48 Ind. App. 166, explained). p. 158.

From Marion Superior Court (A 15,366) ; *Sidney S. Miller,* Judge.

Action by the Penn Beef Company against the Indianapolis Abattoir Company. From a judgment for plaintiff, the defendant appeals. *Reversed.* By the second division.

*William A. Pickens, Linton A. Cox, Earl R. Conder* and *William D. Bain,* for appellant.
*Roemler, Carter & Rust,* for appellee.

NICHOLS, P. J.—Action by appellee against appellant to recover damages in the total sum of $2,850, alleged to have been sustained by appellee by reason of the alleged breach by appellant of certain contracts to sell and deliver to appellee four cars of steers at the respective dates alleged in the several paragraphs of complaint. There were three paragraphs of the complaint, the first founded upon an alleged contract entered into April 6, 1920, by and between appellee and appellant by appellant's agents, O'Neill and Payne, at Philadelphia, Pennsylvania, by the terms of which appellant sold to appellee one car of steers weighing between 700 and 800 pounds each at eighteen and one-half cents per pound to be shipped from Indianapolis, to appellee at Philadelphia, Pennsylvania, on Saturday, April 10, 1920. The sale was confirmed in writing by appellant's agents, O'Neill and Payne, at the instance and request of appellant. It was averred that appellee had complied with all the conditions of the alleged contract by it to be performed, and that it was ready and willing to receive and pay for said car of steers on the day for the delivery thereof, but that appellant failed and refused to ship such car so sold at the time for the shipment thereof and notified appellee that it would not ship

NOVEMBER TERM, 1924.          147

Indianapolis Abattoir Co. *v.* Penn Beef Co.—83 Ind. App. 144.

the same, all to appellee's damage.    The alleged market
price of the steers of the weights specified in the al-
leged contract at the time and place appellant agreed
to deliver the same was twenty-three cents per pound,
and the average weight of the carload of such steers
was alleged to be 22,100 pounds.    There was a demand
for judgment on this paragraph of complaint for $1,000
and interest.    The second and third paragraphs re-
spectively were substantially the same as the first ex-
cept as to the dates, the weights, the price and the
amount of the demand.

Appellant filed its demurrer to each of these para-
graphs of complaint, which was overruled, to which
appellant excepted and then filed its answer, the first
a general denial to each paragraph, the second, an af-
firmative defense to each the first and the second para-
graphs based upon the manner of doing business by
appellee and appellant prior to April 6, 1920, and the
custom of transporting products sold by appellant to
appellee by rail from Indianapolis to Philadelphia, and
averring that the understanding between appellee and
appellant was that the several cars mentioned in the
first and second paragraphs would be shipped by rail
from Indianapolis to Philadelphia; that there was no
other means of transportation considered by them; and
that, for a period of seven days immediately following
April 10, 1920, there was a switchmen's strike in effect
on the lines of all railroads within and proceeding out
of Indianapolis, that the carriers were unable to employ
switchmen to operate cars on their respective railroads,
and that, for that reason, they declared an embargo,
and refused to receive from appellant the several cars
of steers mentioned in the first and second paragraphs
of complaint for shipment to appellee; that such strike
and the embargo of the carriers was not at the instance
or by direction of appellant, but in spite of it; that

148    APPELLATE COURT OF INDIANA,

Indianapolis Abattoir Co. *v.* Penn Beef Co.—83 Ind. App. 144.

such strike was not within the contemplation of appellee and appellant at the time of the agreement between them to ship said several cars of steers, but contrary to their understanding that said cars would be shipped by common carrier in the usual course of business as theretofore; that, by reason of such strike and embargo, appellant was unable to deliver said cars on the dates when cars were agreed to be delivered or within seven days thereafter. By reason of such condition, appellant avers that it was excused and discharged from the performance of the contract.

There was a demurrer to the second paragraph of answer which was sustained, to which ruling of the court appellant excepted. There was a trial by the court with special findings of fact and conclusions of law in favor of appellee, to which conclusions appellant excepted, and upon which judgment was rendered.

The errors assigned in this court are: (1) The action of the court in overruling the several demurrers to each of the paragraphs of complaint; (2) in sustaining appellee's demurrer to the second paragraph of answer; (3) in stating its conclusion of law based upon its special findings of fact as to each paragraph of the complaint.

Appellant contends that its demurrer to the respective paragraphs of complaint should have been sustained for the reason that the contract sued on and set out in each of the paragraphs did not state the price with certainty, that it did not state where the property was to be delivered, and that, therefore, such contract, being for goods and merchandise for more than $50, was insufficient under the Statute of Frauds, §8049 Burns 1926, §7469 Burns 1914, §4910 R. S. 1881. But these objections to the contracts first appear in appellant's Points and Authorities. In the memorandum to appellant's demurrer to each of the paragraphs of complaint, it was

stated that the contracts were each unenforceable because: (1) "No part of the property was delivered, nor was anything given in earnest to bind the bargain or in part payment, nor was any sufficient memorandum in writing of the bargain made and signed by the party to be charged therefor, or by any person by him thereunto lawfully authorized"; (2) that none of the contracts "recited the essential terms of the alleged contract in such a way as to make unnecessary the admission of parol evidence to explain such notes or memorandum"; (3) that the contract, Exhibit C, "is insufficient as not alleging all of the essential terms of the alleged contract and is incomprehensible unless explained by parol evidence." That such indefinite memorandum is insufficient to present any question upon the demurrer has been decided both by the Supreme Court and this court.

In *State, ex rel.* v. *Bartholomew* (1911), 176 Ind. 182, Ann. Cas. 1914B 91, it was held that the defects of the complaint not specifically stated in the memorandum which is a part of the demurrer are waived by the demurring party, and it cannot thereafter question the sufficiency of the complaint for any defect not so specified. It was there held that the reasons why the complaint is insufficient should be stated in plain and concise language.

In *Pittsburgh, etc., R. Co.* v. *Baughn* (1919), 70 Ind. App. 333, specific objections to the complaint as reasons why the demurrer should have been sustained thereto were pointed out by appellant in its "Points and Authorities," but none of these objections was stated in the memorandum which was filed with the demurrer, the memorandum filed therewith being that: "No facts are alleged to show or showing the defendant guilty of actionable negligence," and it was held that such a memorandum was too general and indefinite to present any question, the court saying that it knew

150    APPELLATE COURT OF INDIANA,

Indianapolis Abattoir Co. v. Penn Beef Co.—83 Ind. App. 144.

of no reason why a party filing a demurrer to a pleading should not be as specific in pointing out objections to the trial court as on appeal.

In *Lake Erie, etc., R. Co.* v. *Howarth* (1919), 73 Ind. App. 454, the complaint was defective because of failure to aver knowledge on the part of appellant and want of knowledge on the part of appellee, but it was held by the court that such defect was waived by appellant for failure to specifically point out such defect in its memorandum filed with its demurrer to the complaint. The memorandum to the demurrer stated that the complaint did not state facts sufficient to show that appellant owed appellee any duty, or that it committed a breach of any duty which it owed appellee, or that appellant was guilty of any act of negligence, or that appellee was free from contributory negligence, but that the facts stated affirmatively showed that appellee was guilty of contributory negligence, that it did not state facts to show that the alleged negligence of appellant was the proximate cause of appellee's injuries, but that the facts stated showed that the accident in question resulted proximately from either the negligence of appellee or from the combined negligence of appellee and appellant. The court, speaking with reference to such memorandum, says: "It thus appears that the objections to the complaint are, in the main, stated only in general terms, and that no specific reference is made to the absence of allegations with reference to knowledge on the part of appellant, and want of knowledge on the part of appellee, of the defective condition of said electric bell. If a party wishes to have his objections to the sufficiency of a pleading considered, he must do more than refer to the same in general terms in the memorandum filed with his demurrer thereto." In harmony with these decisions, we hold that the memorandum to the de-

Indianapolis Abattoir Co. *v.* Penn Beef Co.—83 Ind. App. 144.

murrer in this case is too indefinite to present any question and the demurrer to the complaint was properly overruled.

The court did not err in sustaining appellee's demurrer to the second paragraph of answer which as aforesaid avers, as an excuse for failing to ship the steers involved, that there was a strike upon the railroad which caused them to declare an embargo and refuse to accept the stock for shipment. It appears by each of the contracts in controversy that appellant undertook, without any limitation, exception or condition, to deliver the steers sold to the appellee at Philadelphia, Pennsylvania, and appellant cannot be relieved from the performance of his contract except by the act of God or the public enemy or express law. The strike of employees upon a railroad is included in none of these exceptions. The rule is thus stated in 23 R. C. L. 1430, §254: "Where the contract of sale is executory and relates to unidentified property so that any property of the kind and quality stipulated for may be delivered, the seller assumes an absolute liability to make delivery and is not excused from nonperformance by the happening of unforeseen events and accidental causes preventing his filling the contract in the manner he may have contemplated. This is in pursuance of the general rule that where a person absolutely contracts to do a certain thing not impossible or unlawful at the time, he will not be excused from the obligations of the contract unless the performance is made unlawful or is prevented by the other party." Authorities to the same effect are: *Rowe* v. *Town of Peabody* (1910), 207 Mass. 226, 93 N. E. 604; *Cluley-Miller Co.* v. *Freund, etc., Co.* (1909), 138 Mo. App. 274, 120 S. W. 658; *Roseberry* v. *American Ben. Assn.* (1909), 142 Mo. App. 552, 121 S. W. 785; *Marsh* v. *Johnston* (1909), 196 N. Y. 511, 89 N. E. 1104; *Richardson*

& Co. v. Wreschner (1915), 156 N. Y. Supp. 1054; Pilsen Coal Co. v. West Chicago Park Comrs. (1921), 221 Ill. App. 162, 176; Standard Scale, etc., Co. v. Baltimore, etc., Co. (1920), 136 Md. 278, 110 Atl. 486, 9 A. L. R. 1502; Irwin v. Kelly (1912), 176 Ill. App. 178; United States v. Gleason (1899), 175 U. S. 588, 20 Sup. Ct. 228, 44 L. Ed. 284; Neblett v. McGraw (1907), 47 Tex. Civ. App. 207, 103 S. W. 1113.

In Irwin v. Kelly, supra, the action was for damages for failure to deliver certain coal as they had contracted to do, for the reason that there was a shortage of cars. It was there held that such shortage was no defense in such an action, the contingency not having been provided against in the contract.

In the Gleason case, supra, the rule was thus stated: "If a party by his contract charges himself with an obligation possible to be performed, he must make it good, unless his performance is rendered impossible by an act of God, the law, or the other party. Difficulties, even if unforeseen, and however great, will not excuse him. If parties have made no provision for a dispensation, the rule of law gives none—nor, in such circumstances, can equity interpose."

In the Neblett case, supra, it was held that where a building contract provided that the contractor should be liable for delay in performance, he was chargeable with delay while waiting for brick from a brick factory with which he had contracted, though the delay was due to a strike among the servants of the brick factory.

In the instant case, there is no provision in the contract the steers were to be shipped by railroad nor is there any averment in the answer that at any 2. time after the strike ended, which is alleged to have lasted seven days, did appellant make any effort whatever to fulfill its contract and in which it was then in default. Under such circumstances, and

Indianapolis Abattoir Co. *v.* Penn Beef Co.—83 Ind. App. 144.

in the absence of any provisions in the contract protecting appellant against such contingencies, we must hold that the court did not err in sustaining appellee's demurrer to the second paragraph of answer.

Appellee earnestly insists that there was no proper exception to the conclusion of law, the same having been indorsed upon the same paper as the conclusion at the end thereof and beneath the judge's signature. Such exception so indorsed is as follows: "June 22, 1923, the defendant in the above entitled cause now on the announcement of the court of the above special finding of facts and conclusion of law by the court, excepts to said conclusion of law. Pickens, Cox, Conder & Bain, Attorneys for Defendant." Appellee contends that such an exception so taken is not part of the record. Appellee also contends that the case of *King* v. *Downey* (1900), 24 Ind. App. 262, is not the law, and that it should be overruled; but, as we view the situation, we are not, for the purposes of this case, concerned with the case of *King* v. *Downey, supra,* for, in addition to the exception to the conclusion of law indorsed upon the same as above set out, the record of this case shows as follows: "Come now the parties and the court now files its findings of facts and conclusion of law thereon, and to which conclusion of law the defendant excepts, as follows"; then follows of record the special findings of facts and conclusion of law. The fact that this last mentioned exception of record preceded the conclusion of law in the same entry instead of following it, as it seems to us, can make no difference. It is sufficient if such exception is of record in the same entry in which the special findings and conclusion are found. As is said in Elliott's Appellate Procedure, §793: "The exception is shown to be timely if it appears in the same entry as that in which the special

finding is contained." We hold that the appellant substantially complied with the law in taking its exception to the conclusion of law.

Appellant challenges the conclusion for the reason that the special finding failed to find the market value of the goods at Indianapolis on the day fixed in the contract for delivery, instead of at Philadelphia, Pennsylvania. We hold, however, that, under the circumstances of this case, the place of delivery was Philadelphia. It is true that, in the absence of the designation of the place of the delivery in the contract, such place is generally that of the place where the goods were at the time of the sale, and that this will usually be the place of business of the seller. The place of the steers at the time of the sale is not named in the contract or the findings, nor is the residence of appellant named other than as it may be inferred from the name of appellant. On the other hand, the place of residence of appellant's agents, O'Neill and Payne, was in Philadelphia, Pennsylvania, and the contract of sale was finally confirmed and consummated there through such agency, with appellee in said city. Under such circumstances, it seems clear to us that the contracts of sale were Pennsylvania contracts.

In *Hansman* v. *Nye* (1878), 62 Ind. 485, 30 Am. Rep. 199, it was held that where an agent of a person doing business in another state contracts with a merchant in this state for the sale of a bill of goods, that such a contract is an Indiana contract. By the same reasoning, we hold that where appellant, with a residence foreign to the state of Pennsylvania, enters into a contract through its agent in the state of Pennsylvania with a merchant in such last named state, such a contract is a Pennsylvania contract. To the same effect see 13 C. J. 580, where the rule controlling is thus

NOVEMBER TERM, 1924.    155

Indianapolis Abattoir Co. *v.* Penn Beef Co.—83 Ind. App. 144.

stated: "A contract is as a rule considered as entered into at the place where the offer is accepted or where the last act necessary to complete it is performed."

In *Barr* v. *Myers* (1842), 3 Watts & Sergeant (Pa.) 295, 299, the court held that: "If by the contract neither time nor place of performance is stipulated, but they are deliverable on demand, then the general rule is, that the articles sold are to be delivered at the place where they are at the time of the sale—such as the store of the merchant, the shop of the manufacturer or mechanic, and the farm or granary of the farmer, at which they are deposited or kept. And the reason is, that the party to receive is to be the actor, by going to demand the articles; and till then the other party is not in default in omitting to tender them. But the reverse is the case, where though the place is not fixed, the time on or before which the vendor binds himself to deliver the articles is stipulated; for there the party to deliver must become the first actor, in order to fulfil his contract. He must seek out the vendee, at his residence, and there tender the articles, to save himself from default." Authorities are cited to sustain the rule.

It is averred in each paragraph of the complaint that appellee had complied with all the conditions of the contract by it to be performed and that *"it was ready and willing to receive and pay for such car of steers on the basis fixed for delivery thereof."* (Our italics.) The Supreme Court of this state has repeatedly decided that such averment and the proof thereof, in this class of cases, is necessary in order that there may be a recovery. *Magic Packing Co.* v. *Stone-Ordean, etc., Co.* (1902), 158 Ind. 538, 542; *Beard* v. *Sloan* (1868), 30 Ind. 279; *Bailey* v. *Ricketts* (1853), 4 Ind. 488; *Smith* v. *Smith* (1846), 8 Blackf. 208; *Vankirk* v. *Talbot* (1837), 4 Blackf. 367. If such averment and the

Indianapolis Abattoir Co. *v.* Penn Beef Co.—83 Ind. App. 144.

proof thereof was material, then it was a material part of the finding, but it does not appear in the finding. In the absence of such a finding, the conclusion of law cannot be sustained.

For this error, the judgment is reversed, with instructions to the trial court to grant a new trial.

### ON PETITION FOR REHEARING.

NICHOLS, P. J.—Appellee forcefully contends that there should be no reversal because of the absence of a finding by the court that appellee was ready and willing to perform the contract. Each of the cases cited in the opinion involved the breach of an executory contract for the sale of goods.

In the Magic Packing Company case, *supra,* it was held that the party asking to enforce the contract must aver that he has complied with all the conditions of the contract or state facts showing a proper excuse for not so doing. In addition thereto, as to concurrent conditions, he must allege facts showing that he has been ready and willing to perform the same on his part.

The complaint in the Beard case, *supra,* averred that the defendant failed and refused to deliver the corn involved, but did not aver that the plaintiff was ready upon the delivery of the corn to pay the defendant his price according to his promise and, for this reason, the court held that the complaint was fatally defective.

There is a like omission in the Bailey case, *supra,* and the court held that for that reason the counts of the complaint were each substantially defective.

The Smith case, *supra,* involved a contract of sale of 1,000 barrels of salt, the contract having been executed on June 17, 1844, and providing for the delivery of one-half of the salt on or before the first day of the following August, and the other one-half on or before the first day of September next. The complaint averred

that after June 17, 1844, and up to and on the first day of September then next, the plaintiff was ready and willing to accept the salt and pay for the same, but it was held that failing to include June 17 within the time when the plaintiff was ready to accept and pay, the complaint was thereby defective.

The Vankirk case, *supra,* holds that the plaintiff might have given a sufficient excuse for the failure to perform on his part and for not being ready, as he could have been had the defendant by his course not prevented him.

The cases relied upon by appellee do not involve executory contracts for the sale of goods and are, therefore, in view of the foregoing cases, not of controlling force. We do not deem it necessary to discuss each of these cases. We mention, however, the following cases relied upon by appellee.

In *Foster* v. *Leininger* (1904), 33 Ind. App. 669, there was involved a breach of a contract to install a telephone, and it was held that where there was an averment in the complaint that the plaintiff was ready and willing to perform all the conditions of the contract imposed upon him, it was not necessary to aver that the plaintiff had performed certain specific acts which the contract required. It was unnecessary in that case for the court to state, as it did, that the readiness to perform was not a necessary averment.

In the *Peoples Bldg., etc., Assn.* v. *Reynolds* (1897), 17 Ind. App. 453, the contract involved contained reciprocal covenants or mutual conditions to be performed, and it was held that where one of the parties puts it beyond the power of the other to perform, then such other party is relieved from such performance, and that if the complaint avers such facts, it will not be demurrable. The case, however, quotes from *Riley* v. *Walker* (1893), 6 Ind. App. 622, where it was held that be-

Indianapolis Abattoir Co. *v.* Penn Beef Co.—83 Ind. App. 144.

cause of the defendant's failure to perform, it was unnecessary to allege performance or readiness to perform on the part of the plaintiff.    But, in that case, the complaint averred that the plaintiff's contract which was repudiated by the defendant had been fully performed by the other parties thereto and it was held that a demurrer to such complaint was properly overruled. The case involved a lecture contract with James Whitcomb Riley.    A careful reading of it will disclose that it is not of controlling force in this case.

The second, seventh and fourteenth findings of the court found that appellant sold to appellee the steers in controversy.    Appellee contends that by this 7. finding the court found that the price had been paid by the appellee and that there was therefore nothing more for the appellee to do than to accept the steers when tendered.    Appellee contends that the word sold implies that the price has been paid and relies upon *Penn., etc., Sup. Co.* v. *Fosnotte* (1911), 48 Ind. App. 166. That the court in that case did not intend to hold that the word sold implied that the price had been paid is evident from a careful reading of the authority.    The action was for part of the purchase price for goods sold and delivered.    The plaintiff recovered the amount claimed below and the judgment was sustained by the Appellate Court.    In executory contracts of sale, the word "sold" is held to mean "contracted to sell."    *Russell* v. *Nicoll* (1829), 3 Wend. (N. Y.) 112, 20 Am. Dec. 670.    In *Smith* v. *Smith, supra,* cited in the principal opinion, the word "sold" was clearly given this meaning.

The petition for rehearing is denied.